United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

Nos. 04-51160 & 05-50129

CARLOS PACHECO,

Plaintiff-Appellant,

versus

NORMAN Y. MINETA, ETC., ET AL.,

Defendants,

NORMAN Y. MINETA, SECRETARY, DEPARTMENT OF TRANSPORTATION,
Federal Aviation Administration,

Defendant-Appellee.

CARLOS PACHECO,

Plaintiff-Appellee,

versus

NORMAN Y. MINETA, ETC., ET AL.,

Defendants,

NORMAN Y. MINETA, SECRETARY, DEPARTMENT OF TRANSPORTATION,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas

Before GARWOOD, PRADO, and OWEN, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Carlos Pacheco filed this suit against Norman Mineta, the Secretary of the United States Department of Transportation, pursuant to Title VII of the Civil Rights Act of 1964, section 717(c), 42 U.S.C. § 2000e-16(c). Pacheco alleged both disparate-treatment and disparate-impact discrimination. The district court entered summary judgement against Pacheco on his disparate-treatment claim, dismissing that claim with prejudice. The court dismissed Pacheco's disparate-impact claim for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), citing his failure to exhaust his administrative remedies. Pacheco appeals only the second ruling, challenging the district court's dismissal for failure to exhaust administrative remedies. The government cross appeals the district court's failure to award it costs pursuant to Rule 54(d)(1). We affirm the district court's 12(b)(1) dismissal and we vacate and remand the district court's ruling with respect to costs.

**FACTS AND PROCEEDINGS BELOW**

Carlos Pacheco is an Air Traffic Controller Specialist with the Federal Aviation Administration ("FAA") in Corpus Christi, Texas. In December 1999, the Corpus Christi Air Tower announced a supervisor-level vacancy. Pacheco applied, but was ultimately passed over for promotion by a less-experienced applicant.

Air Traffic employees who have bid on a vacancy are subject to

2

a two step selection process. In the first step, a human resources personnel specialist from the Federal Aviation Administration (FAA) Human Resource Management Division (HRMD) determines which of the candidates is qualified for the position, and submits the names of the qualified candidates to the selecting official, which in this case was the Corpus Christi Facility manager, Warren Meehan. In this case, HRMD forwarded seven names, including Pacheco's, to Meehan. In the second step, the selecting official chooses among the candidates referred to him or her by HRMD.

Warren Meehan had recently implemented a promotion system based, not on years of experience, but on twenty-three specified employee attributes, such as initiative, loyalty and integrity. The idea for this system came to him while at a 1999 manager's conference, at which the FAA Regional Manager had described the twenty-three employee attributes that he deemed important in future FAA leaders. Upon his return from the conference, Meehan decided that all future promotions at Corpus Christi would consider these factors.

Meehan's new system was used for the first time in February 2000, for the Operations Supervisor December 1999 vacancy at the Corpus Christi air tower, the promotion that is the subject of Pacheco's suit. [1] The supervisors of all seven employee candidates

---

[1] Since then Meehan's new system was used only on one other occasion.

3

whose names had been forwarded by HRMD were interviewed and asked to rate their supervisee, on a scale of one to ten, in each of these twenty-three attributes. The supervisor interviews were conducted by a three-member panel, which included a Hispanic FAA employee from outside the facility. After the interview results were compiled, the panel reported them to Warren Meehan, who made the final employment decision. Pacheco, who was ranked sixth out the seven employees, was notified on February 28, 2000 that he did not get the promotion.

Pacheco timely contacted an equal opportunity counselor, alleging that he was passed over for promotion on the basis of his race.[2] Unsatisfied with the counselor's advice, Pacheco timely filed a formal administrative complaint on April 29, 2000 with the Equal Opportunity Office (EEO) of his employer, the Department of Transportation (DOT).[3] On June 2, 2000, the DOT's Office of Civil

---

[2]A federal employee who is alleging unlawful discrimination on the basis of race must contact a counselor within 45 calendar days of the alleged discriminatory action, or, in the case of a personnel action, within 45 calendar days of the effective date of the action, before they may file a formal administrative charge with their agency's Equal Opportunity Office. *See* 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105.

[3]In this administrative charge, Pacheco asserts that he was discriminated against because of his race, Hispanic, and that

> "[t]he latest incident [on 2/28/2000]was non-selection
> for a supervisor's job opening at this facility. Once
> again, the 'good old boy' was selected even though I
> was more qualified having been with the agency since
> 1978. This being my seventh facility (my third level 4
> facility). The incident before this occurred the
> summer of 1999 when I had a bid at Orlando in the

4

Rights notified Pacheco by mail that it was accepting the following claim for investigation: "Whether the FAA treated you differently, based on your national origin (Hispanic), when you were not selected for a supervisor's job on February 28, 2000." The letter notified Pacheco that if he objected to the way his claim was stated, he should contact the Office within five days. Pacheco did not respond.

Unsatisfied with the EEO's resolution of his complaint, Pacheco filed this suit in the court below on November 14, 2002, against Norman Mineta, Secretary of the DOT, pursuant to Title VII of the Civil Rights Act of 1964, section 717(c).[4] Pacheco's suit

_____

Southern Region. I was told by the chief that the Southern Region doesn't pick out of region. Three months later, a white controller from our facility was picked up for Atlanta (in the Southern Region). This person hadn't been here two years with the FAA. I asked the chief about the aforesaid policy, he had no comment. An incident before this occurred in 1998, someone defaced a picture of my son on my mail tray (no others were touched). I presented the incident to the chief who in turn told me he would write me a formal letter of apology. It must have slipped his mind because I have yet to receive it."

[4] Only the Title VII claims against Secretary Mineta are at issue here. However, the Title VII claims were not the only claims brought by Pacheco in this suit, nor is Secretary Mineta the only party he sued. Pacheco's original complaint named Secretary Mineta as a defendant for Title VII discrimination and for the depravation of his First Amendment and Equal Protection rights under the color of law, pursuant to § 1983. Pacheco then amended his complaint to add as a defendant the manager of the Corpus Christi facility in which he worked, Warren Meehan. Pacheco then amended his complaint for a second time, specifying that he was suing Secretary Mineta, in his official capacity, under Title VII and was suing Warran Meehan, in his individual

5

alleges both disparate-treatment discrimination and disparate-impact discrimination.[5] The district court entered summary judgment against Pacheco on his disparate-treatment claim, and dismissed Pacheco's disparate-impact claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The court held that Pacheco had failed to exhaust his administrative remedy before the EEO with respect to his disparate-impact claim. Pacheco does not appeal the summary judgment dismissal of his disparate-treatment claim. His only issue before this court is whether he exhausted his administrative remedies with respect to his disparate-impact claim.

Despite the DOT's summary judgment victory, the district

capacity, under § 1983. After the government reminded Pacheco's attorney that § 1983 applies to state, not federal, officials, Pacheco asked the district court for leave to file a third amended complaint, replacing references to "section 1983" with "section 1981." Citing Federal Rule of Civil Procedure 15(a), the court noted that such an amendment would be "futile" because Pacheco's exclusive remedy for employment discrimination lies under Title VII, against Secretary Mineta in his official capacity. The court then dismissed with prejudice all claims against Warren Meehan, a ruling that Pacheco does not appeal.

[5]Pacheco's disparate impact allegations are wholly conclusional. His second amended (and final) complaint merely alleges: "The application and selection process utilized by the Defendant disparately impacts Plaintiff in that Hispanic applicants in the Southwest Region of the Federal Aviation Administration are disproportionately not selected for supervisory and management positions as compared to Anglo applicants." There is no suggestion of in what manner the process operated so as to disadvantage Hispanics nor is there identified any particular feature or aspect of the process which allegedly had such an effect on Hispanics generally or on Pacheco in particular; nor does the complaint even allege what the application and selection process consists of.

6

court, without explanation, ordered that each party bear its own costs pursuant to Rule 54(d)(1). FED.R.CIV.P. 15(d)(1). The DOT filed a motion for a new trial and to amend judgment on the ground that the court erred in denying an award of costs to the prevailing party without any explanation. The district court then ruled that the losing party "brought this action in good faith" and accordingly denied the DOT's motion. The DOT has cross-appealed on the issue of costs.

**DISCUSSION**

I.  Exhaustion of the Disparate-Impact Claim

Pacheco appeals the district court's Rule 12(b)(1) dismissal of his disparate-impact claim, arguing that he did, in fact, exhaust his administrative remedies before the EEO. Because we find that the scope of Pacheco's administrative charge is too narrow to have exhausted a claim for disparate-impact discrimination, we affirm.

A.  Disparate Impact versus Disparate Treatment

Title VII creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact. *International Brotherhood of Teamsters v. United States*, 97 S.Ct. 1843, 1854 n.15 (1977). Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-

treatment cases, proof and finding of discriminatory motive is required. *Id.*

Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group. *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982). In disparate-impact cases, proof or finding of discriminatory motive is not required. *Id.* The defendant, however, can rebut a prima facie showing of disparate impact by proving that the challenged policy is a business necessity. *Griggs v. Duke Power Co.*, 91 S.Ct. 849, 853-54, (1973).

B. The Exhaustion Requirement

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c), permits most federal employees to seek relief from proscribed discriminatory employment practices in Federal District Court. As a precondition to seeking this judicial relief, however, complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency.[6] *Brown v. General Servs.*

---

[6]Instead of the EEO, private sector employees must file an administrative charge with the Equal Employment Opportunity Commission (EEOC). 42 U.S.C. § 2000e-(5)(b) (2005). Because the presently relevant scope of the exhaustion requirement is the same for both federal and private employees, we freely cite to both federal and private-sector employment-discrimination cases here. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995)

*Admin.*, 96 S.Ct. 1961, 1967–68 (1976); *Martinez v. Dep't. of U.S.*

*Army*, 317 F.3d 511 (5th Cir. 2003); 29 C.F.R. § 1614.105-107

(2005). We review *de novo* a district court's determination of

whether the exhaustion requirement is satisfied.[7] *Martinez*, 317

────────────────

(treating the scope-of-investigation question the same for both private and public employees).

[7]There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction. The Supreme Court has held that the EEOC or EEO *filing deadlines* are not jurisdictional. *Zipes v. Trans World Airlines, Inc.*, 102 S.Ct. 1127, 1133(1982); *Irwin v. Dep't of Veterans Affairs*, 111 S.Ct. 453, 457-58 (1990). *See also Coke v. Gen. Adjustment Bureau*, 640 F.2d 584 (5th Cir. 1981) (*en banc*); *Henderson v. United States Veterans Admin.*, 790 F.2d 436, 440 (5th Cir. 1986). However, the reasoning in *Zipes*, which cites our *en banc* holding in *Coke* with approval, relies heavily on legislative history and Supreme Court precedents that characterize the filing deadlines as statutes of limitations. *See, e.g.*, *Henderson v. U.S. Veterans Admin.*, 790 F.2d 436, 440 (5th Cir. 1986) ("The filing deadlines are in the nature of statutes of limitations which are subject to waiver, estoppel, and equitable tolling."). Neither the Supreme Court nor this court sitting *en banc* has ruled that the *exhaustion* requirement is subject to waiver or estoppel, and our panels are in disagreement over that question. *Compare Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990) ("[I]t is the well-settled law of this circuit that each [Title VII] requirement is a prerequisite to federal subject matter jurisdiction.") *and Porter v. Adams*, 639 F.2d 273, 276 (5th Cir. 1981) ("The exhaustion requirement ... is an absolute prerequisite to suit") *and Randel v. Dep't. of U.S. Navy*, 157 F.3d 392, 395 (5th Cir. 1998) ("If the claimant fails to comply with either of these [Title VII] requirements then the court is deprived of jurisdiction over the case.") *with Young v. City of Houston, Tex.*, 906 F.2d 177, 180 (5th Cir. 1990) ("A failure of the EEOC prerequisite does not rob a court of jurisdiction.") *and Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 449 (5th Cir. 1983) ("The basic two statutory requirements (although these are not necessarily "jurisdictional") for a Title VII suit are . . . ."). Because neither party has a winning waiver or estoppel

9

F.3d at 512; *Randel v. Dep't. of U.S. Navy*, 157 F.3d 392, 395 (5th Cir. 1998).

The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. *Sanchez v. Standard Brands*, *Inc.*, 431 F.2d 455, 463 (5th Cir. 1970); *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).[8] On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. *Id.* at 466. Indeed, "[a] *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Sanchez*, 431 F.2d at 467. *See also Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir.1981) ("[a]llowing a

argument, we need not take sides in this dispute.

[8]*See also Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1005 (5th Cir. 1969) ("an individual drafting his charge as best he can without expert legal advice . . . a single, poor ignorant employee with a grievance, not a sling shot in his hand, faces a huge industrial employer in this modern day David and Goliath confrontation.") (Brown, C.J.).

10

federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation . . . is precluded if it would circumvent . . . agency efforts to secure voluntary compliance before a civil action is instituted."). With that balance in mind, this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466. We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label. *Fellows*, 701 F.2d at 451; *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *Ong*, 642 F.2d at 319.[9]

So, for example, in *Fellows*, this court held that an entire *class* of plaintiffs had exhausted their administrative remedies,

---

[9]The administrative charge is construed "liberally," *see Fellows,* 701 F.2d at 451, but, at least for the most part, the desired liberality is achieved by application of the rule that courts will look beyond the scope of the charge's language to the scope of the EEO investigation which can reasonably be expected to grow out of the charge. Furthermore, this liberal construction applies even in cases brought against the federal government, despite the Supreme Court's admonition that Title VII's conditions on the waiver of sovereign immunity be strictly construed. *Compare Library of Congress v. Shaw*, 106 S.Ct. 2957 (1986) (holding that Title VII conditions on waiver must be strictly construed); *with Irwin v. Dep't of Veteran Affairs*, 111 S.Ct. 453, 457 (1990) ("[W]e must be careful not to assume the authority to narrow the waiver that Congress intended . . . .") (citation omitted).

11

even though the administrative charge complained only of *individual* discrimination. *Fellows*, 701 F.2d at 447. *See also Sanchez*, 431 F.2d 455 (same). Later, in *Gamble v. Birmingham Southern Railroad Co.*, this court held that black railroad workers who had filed an administrative charge complaining of discrimination in promotions to *conductor* had also exhausted their administrative remedies with respect to claims of discrimination in promotions to *higher supervisory positions*. 514 F.2d 678 (5th Cir. 1975).

On the other hand, in *Fine v. GAF Chemical Corp.*, this court held that a plaintiff's administrative remedies were *not* exhausted with respect to an incident of sexual discrimination because the incident sued upon was separate from the one raised in her administrative charge. 995 F.2d 576, 577-78 (5th Cir. 1993). And, in *Young v. City of Houston*, this court held that a sex discrimination claim had not been exhausted by the plaintiff's charge of race and age discrimination. 906 F.2d 177 (5th Cir. 1990).

This court has not faced a question on appeal like Pacheco's: whether a disparate-impact claim was exhausted by the plaintiff's administrative charge.[10] Thus, we have yet to

---

[10]The only exception is that we addressed this question in one unpublished opinion. *Stith v. Perot Systems Corp.*, 122 Fed. Appx. 115 (5th Cir. 2005). However, because of the fact-intensive nature of this analysis, *Stith*'s reasoning is too

consider what facts in an administrative charge might be reasonably expected to trigger an EEO disparate-impact investigation.  However, other circuits, as well as some federal district courts, have addressed the question.

For example, in *Grace v. Bank of America*, Judge Fitzwater ruled that a plaintiff who filed an administrative charge of a race-based firing did not exhaust her disparate-impact claim. *Grace v. Bank of America*, No. Civ. A. 303CV 1294D,  2003 WL 23095993 (N.D. Tex. Dec. 23, 2003).  In *Grace*, the plaintiff had filed an administrative charge asserting that the bank discriminated against her by terminating her employment.  In dismissing the plaintiff's disparate-impact claim, the court explained that "a claim for disparate impact is not 'like or related to' the plaintiff's EEOC charge nor could it reasonably be expected to grow out of [it]."  *Id.*

Judge Cote in the Southern District of New York issued a similar ruling in *Woodman v. WWOR-TV*, holding that the plaintiff's administrative charge could be reasonably expected to lead only to an investigation of age-based disparate treatment, not age-related disparate impact.  *Woodman v. WWOR-TV*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003).  In that case, the plaintiff had filed an age-discrimination charge with the EEO alleging that:

conclusory to be helpful here.

13

"[A]ll of my nine colleagues at BHC/WWOR who were fired, except two, were over the age of 40. On the other hand, my counterpart in Los Angeles, who is much younger, was not fired. It seems, therefore, that age was a motivating factor in my employment termination."

*Woodman*, 293 F. Supp. 2d at 390. The court held that it was not enough for the plaintiff to have alleged that other colleagues were affected because she had failed to "identify a specific, facially neutral employment practice." *Id.* Furthermore, the court reasoned that the plaintiff's administrative charge had complained of *intentional* age discrimination, a crucial element in a disparate-treatment claim that is unnecessary in a disparate-impact claim. *Id.*

In *Gomes v. Avco*, the Second Circuit held that the plaintiff's administrative charge had exhausted both a claim for disparate-treatment and disparate-impact discrimination. 964 F.2d 1330, 1335 (2d Cir. 1992). There, plaintiff's administrative charge stated he was passed over for promotion because of his Portuguese ancestry. He alleged that (1) he applied for a promotion; (2) such promotions are governed by an "eight-years experience" rule; (3) he arguably met this eight-year experience requirement; (4) the promotion was given to someone less qualified; and (5) he was the only Portuguese employee in his job classification.

The court held that "[t]o be sure, this complaint most naturally supports a claim of intentional discrimination . . .

14

nonetheless, once the EEOC investigated the case and found that [the plaintiff] did not satisfy the eight year rule, it would have been perfectly natural for the EEOC to question the necessity of the eight year rule itself." *Id.* at 1334. The court reasoned that the plaintiff's allegation that he was the only Portuguese employee in his job classification would reasonably lead the EEOC to consider disparate impact. *Id.* Furthermore, the allegation that less-qualified people were promoted ahead of him might lead the EEOC to question the business justification for such a rule. *Id.* But most importantly, unlike *Grace* or *Woodman,* the plaintiff in *Gomes* had identified a facially neutral employment policy (the eight-year rule) that provided a foundation for an EEO disparate-impact investigation. The court recognized that the eight-year rule would have put the EEO on notice of a possible disparate-impact claim, thus "an investigation of [the plaintiff's] disparate impact claim would reasonably have flowed from an investigation of his disparate treatment claim." *Id.* at 1335.

C. Pacheco's Administrative Charge

Pacheco's administrative charge (see note 3, *supra*) lists three incidents of discrimination:

(1) "The [February 28, 2000] incident was non-selection for a supervisor's job opening at this facility. Once again, the "good old boy" was selected even though I was more qualified having been in the agency since 1978. This being my seventh facility (my third level 4 facility)."

15

(2) "The incident before this occurred the summer of 1999 when I had a bid at Orlando in the Southern Region. I was told by the Chief that the Southern Region doesn't pick out of region. Three months later a white controller from our facility was picked up for Atlanta(in the Southern Region). This person hadn't been here two years with the FAA. I asked the Chief about the aforesaid policy, he had no comment."

(3) "An incident before this occurred in 1998, someone defaced a picture of my son on my mail tray (no others were touched). I presented the incident to the Chief who in turn told me he would write me a formal letter of apology. It must have slipped his mind because I have yet to receive it."

Only the first incident was accepted for investigation by the EEOC. The second and third were rejected as time-barred.[11] These two incidents (which are not the subject of the instant suit) are relevant only to the extent that they provide context to the first.

In reviewing the first incident, the question is whether a disparate-impact investigation might reasonably be expected to grow out of the facts that Pacheco did allege. In deciding this question, a review of the prima facie case for disparate impact

---

[11]According to Pacheco, the two earlier incidents occurred in the Summer of 1999 and in 1998. His formal complaint with the EEO is dated April 29, 2000. Generally, discrimination claims alleging conduct that occurred more than 45 days before the initiation of administrative action (contacting an EEO counselor) are time barred in a subsequent action in federal court. 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105. Furthermore, if the complaint remains unresolved after counseling, the employee must file a formal complaint with the EEO within 15 days of the last counseling session. 29 C.F.R. § 1614.105(b); 29 C.F.R. § 1614.106(d).

16

is relevant.  A disparate-impact plaintiff must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class.  *Hebert*, 682 F.2d at 1116.  Furthermore, proof of discriminatory motive is not required for disparate-impact claims.  *Id.*

On its face, Pacheco's administrative charge alleges none of the elements of disparate impact.  Instead, it is facially a disparate-treatment claim, like those in *Grace* and *Woodman*, alleging that he was singled out for intentional discrimination because of his race.  Pacheco complained that he was passed over for promotion in favor of a "good old boy."[12]  As the district court below noted, this complaint "clearly supports claims for unfair and intentional discrimination, but does not even suggest claims under a disparate impact theory."

In particular, we note that Pacheco's administrative charge fails to identify any neutral employment policy that would form the basis of a disparate-impact claim. *See Gomes*,964 F.2d 1330,

---

[12]Pacheco's deposition testimony makes clear that his is a complaint about intentional discrimination by his third-level supervisor, Warren Meehan.  When pressed for examples of this discrimination, Pacheco said, "[I]t was just the way he acted around me . . . I was just somebody that just happened to be there and that he just had to contend with basically."  Pacheco also remembered a racist joke that was told to him by Mr. Meehan on a golf course.

Pacheco's deposition also reflects that it was Meehan who allegedly mislead him in 1999 by falsely telling him that the Southern Region "doesn't pick out of region" as asserted in this administrative charge.

1335. A neutral employment policy is the cornerstone of any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business justifications for the policy.

Finally, we note that all three incidents mentioned in Pacheco's administrative charge are examples of disparate-treatment discrimination. The two earlier incidents, where Pacheco was allegedly lied to about the Southern Region's hiring policy and allegedly harassed by a co-worker who defaced a picture of his son, though time barred, provide a context for understanding Pacheco's latest allegation. In his administrative charge, Pacheco himself links all three incidents, suggesting that they were part of a larger pattern of *intentional* discrimination *against him* by the manager of the FAA's Corpus Christi facility.

To be clear, we do not require that a Title-VII plaintiff check a certain box[13] or recite a specific incantation to exhaust his or her administrative remedies before the proper agency. *See Sanchez*, 431 F.2d at 463–65. Nor do we require, for purposes of exhaustion, that a plaintiff allege a prima face case before the EEOC. *See Id.* Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into

---

[13]*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970) ("In the context of Title VII, no one—not even the unschooled—should be boxed out").

what EEOC investigations it can reasonably be expected to trigger.

In this case, we hold that a disparate-impact investigation could not reasonably have been expected to grow out of Pacheco's administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only.[14]  Accordingly, we affirm the district court's 12(b)(1) dismissal of Pacheco's disparate-impact claim.

II.  Discovery

Because we hold that Pacheco did not exhaust his administrative remedies with respect to his disparate-impact claim, we need not decide whether, as Pacheco contends, the district court abused its discretion by denying Pacheco certain discovery on that claim.  Nevertheless, we note that the record indicates no such abuse of discretion. *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 147-48 (5th Cir. 1996) (reviewing for abuse of discretion); *Mayo v. Tri-Bell Indus., Inc.*, 787 F.2d 1007, 1012 (5th Cir. 1986) (declining to reverse trial court's "discovery rulings" unless they are "arbitrary or clearly unreasonable").

--------

[14]Moreover, this is also supported by Pacheco's statement on the charge form that "I want to leave this hostile work environment. A paid transfer to a facility of my choice, either Orlando, Tampa, Pensacola or Jacksonville", and by Pacheco's never having questioned DOT's reasonable interpretation of the charge as being only one of disparate treatment.

19

Not until this suit has Pacheco finally alleged, albeit in only the most conclusory fashion, disparate-impact discrimination. His complaint alleges that he was the victim not only of intentional discrimination but also of a facially-neutral promotion "application and selection process" with an adverse impact on Hispanics.[15]

Pacheco was eliminated in the new configuration of the second stage of the selection process which was used for the first time in February 2000 in the promotion to fill the Corpus Christi Operations Supervisor vacancy which Pacheco was denied. According to Meehan's affidavit, the process has been used only one other time since, and there is no contrary evidence. Despite this, Pacheco's interrogatory requested the identity "of all persons who have been selected or promoted into a supervisory or management position in the southwest region of the FAA between 1995 and the present . . . [including] their race and national origin."

The information sought through this interrogatory would have

---

[15]Pacheco also introduced a newspaper article from the San Antonio Express News reporting a Department of Labor study that acknowledged a statistical underrepresentation of Hispanics in Federal Agencies. This article is not relevant to the exhaustion question because it was not submitted to the EEO, but was produced by Pacheco, after suit was filed in district court, in response to discovery requests. Further, the study has only the very slightest relevance to Pacheco's disparate-impact claim, since it reported underrepresentation in employment, not promotions, and was a survey of the *entire executive branch* as a whole, not merely the FAA or its Southwest Division.

been of limited relevance to Pacheco's suit. Pacheco requested the discovery of FAA employee-promotion data dating back to 1995, five years before the policy of which he apparently complains was implemented. More importantly, Pacheco requested this data for the entire Southwest region,[16] even though he never alleged discrimination by anyone but the Manager of the FAA's Corpus Christi facility.[17] Accordingly, even if Pacheco had exhausted his administrative remedies with respect to his disparate-impact claim, we would decline to hold that the district court abused its discretion by denying Pacheco such broad, and largely irrelevant, discovery. *See, e.g.*, *Atkinson*, 84 F.3d at 147 (holding, in an age discrimination suit, that the district court did not abuse its discretion by denying discovery of past employee records because there was no nexus between the plaintiff's claim and the records that the plaintiff sought); *Conboy v. Edward D. Jones & Co.*, L.P., 140 Fed.Appx. 510, 516 (5th Cir. 2005) (unpublished).

II. Cross Appeal on Rule 54(d)

The DOT argues that, as a matter of law, the good faith of the plaintiff is, by itself, an insufficient reason to defeat the cost-shifting provision in Rule 54(d). This question is a matter

---

[16] The Southwest region comprises 480 facilities in Arkansas, Louisiana, New Mexico, Oklahoma, and Texas.

[17] The FAA responded to Pacheco's discovery requests with an affidavit, objecting that the production of this information for the last eight years would be unduly burdensome.

21

of first impression in this court, but all circuits that have expressly considered the question agree with the DOT's position.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs, other than attorneys' fees shall be allowed as of course to the prevailing party unless the district court otherwise directs . . . ." FED.R.CIV.P. 54(d)(1). Because the Rule authorizes the district court to deny the award, we review that exercise of authority for abuse of discretion. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir.1985). Only when a clear abuse of discretion is shown can an award of cost be overturned. *Kinnear-Weed Corp. v. Humble Oil and Refining Co.*, 441 F.2d 631, 637 (5th Cir.1971).

However, Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs. *Schwarz*, 767 F.2d at 131. Indeed, this court has held that "the prevailing party is prima facie entitled to costs," and has described the denial of costs as "in the nature of a penalty." *Schwarz*, 767 F.2d at 131. As a result of this cost-shifting presumption, the general discretion conferred by Rule 54(d)(1) has been circumscribed by the judicially-created condition that a court "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so." *Schwarz*, 767 F.2d at 131 (citation omitted); *cf. Delta Air Lines, Inc. v. August*, 101 S.Ct. 1146, 1151 n.14 (1981) (assuming that costs are denied to

22

the prevailing party "only when there would be an element of injustice in a cost award").

The Fifth Circuit has little case law addressing this issue, but in other circuits, "[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party." 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2668, at 234 (1998). Among these are: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.[18] *Id.* And, according to Wright and Miller, courts also deny costs if "the losing party prosecuted the action in good faith." *Id.* at 238. However, every case cited by Wright and Miller for this proposition denies costs on the basis of *both* the losing party's good faith *and* some other one or more of the factors listed above.

Every circuit to expressly address the question in a published opinion—the Fourth, Sixth, Seventh, Ninth and Tenth—has ruled that good faith, by itself, cannot defeat the operation of Rule 54(d)(1). *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994) ("[T]he mere fact that a suit may have been brought in good

---

[18]These reasons are enumerated only for the purpose of exposition. We do not decide whether any of these is a sufficient reason to deny costs.

23

faith is alone insufficient to warrant a denial of costs in favor of a prevailing defendant"); *Cherry v. Champion*, 186 F.3d 442, 446 (4th Cir. 1999) ("[A] party's good faith, standing alone, is an insufficient basis for refusing to assess costs against that party."); *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 731 (6th Cir. 1986) ("Good faith without more, however, is an insufficient basis for denying costs to a prevailing party"); *Coyne-Delany v. Capital Development Board of Illinois*, 717 F.2d 385, 390 (7th Cir. 1983) ("The losing party's good faith and proper conduct of the litigation is not enough . . . ."); *National Information Services, Inc. v. TRW, Inc.*, 51 F.3d 1470, 1472-73 (9th Cir. 1995), *overruled on other grounds by Association of Mexican-American Educators v. State of California*, 231 F.3d 572, 593 (9th Cir. 2000) (*en banc*) (overruling National Information Systems but only to the extent it held that "*only* misconduct may support the denial of costs to a prevailing party"); *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997).

Here, even though the DOT was in all respects the prevailing party, it has been denied costs by the district court.[19]  When

---

[19]A dismissal with prejudice is tantamount to a judgment on the merits and thus the prevailing party is entitled to costs. *Schwarz*, 767 F.2d at 130-31.  Furthermore, this court has held that the more stringent *Christiansburg* standard, which used to determine whether a defendant is a prevailing party for the purpose of awarding *attorneys' fees* under Title VII, does not apply to an award of costs. *Lewis v. NLRB*, 750 F.2d 1266, 1279

the government pressed the court for a reason, which it was required to give, the district court replied: "It is clear that Plaintiff brought this action in good faith.  He is represented by an excellent lawyer who litigates in good faith.  Under such circumstances, each party should bear its own costs."

Following our sister circuits, we hold that the losing party's good faith is alone insufficient to justify the denial of costs to the prevailing party. All federal litigants, including this plaintiff, have an obligation to bring suit in good faith. FED.R.CIV.P. 11; WESTERN DISTRICT OF TEXAS LOCAL RULE AT-4, STANDARDS OF PROFESSIONAL CONDUCT (adopting the standards of professional conduct of the State Bar of Texas, including Rule 3.01, which requires attorneys to bring suits in good faith).  As the Ninth Circuit has said, "It follows that noble intentions alone do not relieve an unsuccessful litigant of the obligation under Rule 54(d) to compensate his opponent for reasonable costs.  'If the awarding of costs could be thwarted every time the unsuccessful party is a normal, average party and not a knave, Rule 54(d)(1) would have little substance remaining.'" *National Information Services, Inc., supra,* 51 F.3d at 1472-73.

The district court abused its discretion in denying costs to the prevailing party on the basis of plaintiff's good faith alone.  Out of respect for the district court's statutory

---

(5th Cir. 1985).

discretion to shift costs, we vacate the award of costs and remand for a re-determination of whether (or to what extent) costs should be awarded to the prevailing party and, if not, the reasons for that denial.

## CONCLUSION

Because we hold that Pacheco failed to exhaust his administrative remedies with respect to his claim for disparate-impact discrimination, we affirm the district court's Rule 12(b)(1) dismissal of that claim. However, because the district court abused the cost-shifting discretion granted to it under Rule 54(d)(1), we vacate the district court's ruling on the award of costs and remand for a re-determination of whether (or to what extent) costs should be awarded to the prevailing party.

The judgment is AFFIRMED in all respects except as to costs; the district court's ruling as to costs is VACATED, and the cause is REMANDED to the district court solely for a redetermination, not inconsistent herewith, of whether (or to what extent) costs should be awarded to the prevailing party.

26