JONES, Circuit Judge,
specially concurring.
As a second-best result, I concur in the court’s judgment to reverse and remand this case for reconsideration under the recently promulgated HUD guidelines. This is second-best, however, because on remand, the district court should reconsider the State’s forceful argument that the ap-pellees did not prove a facially neutral practice that caused the observed disparity in TDHCA’s allocation of LIHTC units to predominately “non-Caucasian” areas. Perhaps the standard for proving a prima facie case of disparate impact in the fair housing context was uncertain before the HUD guidelines resolved circuit splits. In any event, because FHA cases will now be modeled closely upon the Title VII formula, it is clear that the appellees could not rely on statistical evidence of disparity alone for their prima facie case. See Smith v. City of Jackson, 544 U.S. 228, 241, 125 S.Ct. 1536, 1545, 161 L.Ed.2d 410 (2005) (“[I]t is not enough to simply allege that there is a disparate impact on workers.”); Pacheco v. Mineta, 448 F.3d 783, 787 n. 5 (5th Cir.2006) (finding “Pacheco’s disparate impact allegations ... wholly conclusional” because “[t]here is no suggestion of in what manner the process operated so as to disadvantage Hispanics”); Simms v. First Gibraltar Bank, 83 F.3d 1546, 1555 (5th Cir.1996) (Fair Housing Act issue is “whether a policy, procedure, or practice specifically identified by the plaintiff has a significantly greater discriminatory impact on members of a protected class.”) A plaintiff must specifically identify the facially neutral policy that caused the disparity.
The appellees’ entire argument for disparate impact here assumed the conclusion: there is a statistical “imbalance” in the location of LIHTC units approved by TDHCA, therefore there must be a disparate approval “practice” that causes the statistical imbalance. The district court accepted this oversimplified formulation. But under disparate impact law, the State’s burden is NOT to justify the statistics, but only the facially neutral policy or policies that caused the statistics. The State’s burden ensues only when a plaintiff *284 isolates the policy that caused the disparity. Without proof of an offending policy, alleged racial imbalance in and of itself is both the cause and effect of a violation. This has not been the law for many years. The Supreme Court held in Wards Cove that:
“[e]ven if on remand respondents can show that nonwhites are underrepresented ... in a [statistically correct] manner ..., this alone will not suffice to make out a prima facie case of disparate impact. Respondents will also have to demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking here, specifically showing that each challenged practice has a significantly disparate impact on employment opportunities for whites and nonwhites. To hold otherwise would result in employers being potentially liable for ‘the myriad of innocent causes that may lead to statistical imbalances in the composition their work forces.’ ”
Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657, 109 S.Ct. 2115, 2125, 104 L.Ed.2d 733 (1989) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 992, 108 S.Ct. 2777, 2787, 101 L.Ed.2d 827 (1988)). Put more bluntly, if the appellees’ framing of disparate impact analysis is correct, then the NBA is prima facie liable for disparate impact in the hiring of basketball players.
As the district court’s opinions demonstrate, TDHCA’s policies and practices for awarding LIHTC grants are anything but simple. They are governed by federal and state statutes, which require satisfaction of numerous criteria to ensure the integrity, financial viability, and effectiveness of the projects. One specific object of the federal tax credit provision is to advantage projects located in low income census tracts or subject to a community revitalization plan. 26 U.S.C. § 42(m)(l)(B). In essence, the appellees are seeking a larger share of a fixed pool of tax credits at the expense of other low-income people who might prefer community revitalization. To balance these conflicting goals while meeting the program’s other specifications, a complex point system has been used and annually updated. On remand, the district court must “require, as part of [appellees’] prima facie case, a demonstration that specific elements of the [State’s award practices] have a significantly disparate impact on nonwhites.” Wards Cove, 490 U.S. at 658, 109 S.Ct. at 2125.
I concur in the judgment.