# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 27, 2017

Lyle W. Cayce
Clerk

No. 16-20604

KENNETH W. MERCER; JAMES HANKS; LARRY FOWLER; JERMAINE JONES; ABEL NINO; SHELBI HYDE-BELL; JEREMIAH HEIKKILA; CHARLES FERGUSON; BLAKE KELLEY; RICHARD JOHNSON; JONATHAN SIMSICH; CHARLES CATES,

Plaintiffs - Appellants

v.

PATTERSON-UTI DRILLING COMPANY, L.L.C.,

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-346
USDC No. 4:15-CV-1443

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The plaintiffs appeal the district court's granting Patterson-UTI Drilling Company, L.L.C.'s motion for summary judgment on their WARN Act claims. We find no error and AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20604

FACTUAL AND PROCEDURAL BACKGROUND

Patterson-UTI is an oil and gas drilling company that has drilling rigs spread throughout the United States. Patterson-UTI provides drilling services to its customers, who are oil and natural gas exploration and production companies. Patterson-UTI and its customers enter into drilling contracts, which vary according to each customer's drilling needs.

The plaintiffs are former employees of Patterson-UTI. Each plaintiff worked on Patterson-UTI's drilling rigs. After Patterson-UTI's customers terminated some of their drilling operations, Patterson-UTI decided to decommission, or "stack," some of its drilling rigs temporarily. Due to this stacking, Patterson-UTI terminated the employment of each plaintiff between December 2014 and February 2015.

In February and March 2015, the plaintiffs filed two separate lawsuits against Patterson-UTI. The two lawsuits were consolidated in the United States District Court for the Southern District of Texas. The plaintiffs alleged that Patterson-UTI violated the federal Worker Adjustment and Retraining Notification Act (the "WARN Act") by terminating their employment without providing them with sixty days' advance written notice. *See* 29 U.S.C. §§ 2101–2109.

The plaintiffs characterize Patterson-UTI's business as consisting of seven geographical operational areas. The areas were based out of the following cities: Dickinson, North Dakota; Midland, Tyler, and Victoria, Texas; Oklahoma City, Oklahoma; Eighty Four, Pennsylvania; and Fruita, Colorado. The plaintiffs asserted that the drilling rigs within each operational area should be considered a "single site of employment" for WARN Act purposes because the drilling rigs satisfied the "reasonable geographic proximity" test under 20 C.F.R. § 639.3(i)(3). The plaintiffs pled in the alternative that each operational area should be treated as a single site of employment under three

2

No. 16-20604

other Department of Labor ("DOL") regulations. *See* 20 C.F.R. §§ 639.3(i)(1), (6), (8).

In January 2016, the plaintiffs filed a motion for class certification. In March 2016, Patterson-UTI filed both a memorandum in opposition to the plaintiffs' motion for class certification and a motion for summary judgment. In its summary judgment motion, Patterson-UTI sought complete dismissal of the plaintiffs' WARN Act claims. It argued that the plaintiffs could not prevail on their WARN Act claims because an employer is only required to provide advanced notice under the WARN Act before a "mass layoff" or "plant closing," as those terms are defined in the Act.

In their response to the summary judgment motion, the plaintiffs did not argue that the drilling rigs within each operational area were a single site of employment under Section 639.3(i)(6). They did contend, though, that they had "fully demonstrated that [the] drilling rigs in each Distinct Operational Area are properly aggregated as single sites of employment in each such area pursuant to [Section 639.3(i)(3)]."

The district court held a hearing on the motion and granted summary judgment in favor of Patterson-UTI. The court concluded that there was "no basis to aggregate the drilling sites to form a single site of employment" and that "[n]one of the exceptions apply. So summary judgment must [be] granted to the defendant." Patterson-UTI subsequently filed a bill of costs with the district court, which the district court partially awarded.

On appeal, the plaintiffs seek reversal of both the grant of summary judgment and also the partial award of costs.

## DISCUSSION

The plaintiffs raise three arguments on appeal. First, they contend that the district court erred in concluding that the drilling rigs within the

3

No. 16-20604

Patterson-UTI operational areas could not be aggregated into a single site of employment.  Second, the plaintiffs argue that the district court erred in granting summary judgment, without first giving notice to the plaintiffs, on theories of liability not addressed in Patterson-UTI's motion for summary judgment.  And, third, the plaintiffs argue that the district court abused its discretion in awarding costs to Patterson-UTI because the WARN Act is a remedial statute and they brought their claims in good faith and presented an issue of first impression.  We address each of these arguments in turn.

## I.     *"Single site of employment" under the WARN Act*

Whether the drilling rigs within a Patterson-UTI operational area "constituted a single site of employment under the WARN Act is a mixed question of fact and law."  *See Davis v. Signal Int'l Tex. GP, L.L.C.*, 728 F.3d 482, 485 (5th Cir. 2013).   "We review the district court's findings of underlying fact for clear error" and "review the legal question of whether there was a single site of employment based on the underlying historical facts *de novo*."  *Id.*

Prior to ordering a "plant closing" or a "mass layoff," the WARN Act requires that certain employers provide each affected employee with sixty days' advance written notice.  29 U.S.C. § 2102(a).  The Act defines a plant closing as the temporary or permanent closing of "a single site of employment, or one or more facilities or operating units within a single site of employment," which results in an employment loss for at least fifty employees over a thirty-day period.  *Id.* § 2101(a)(2).  A mass layoff is an employer's reduction in work force at a "single site of employment during any 30-day period" by at least fifty employees, an amount which must also be "at least 33 percent of the employees (excluding any part-time employees)" at that single site of employment.  *Id.* § 2101(a)(3).  Hence, both a plant closing and a mass layoff must occur at a single site of employment.

4

The WARN Act does not define single site of employment. We have, however, looked to the DOL's regulations for guidance in defining the term. *See, e.g.*, *Meadows v. Latshaw Drilling Co., L.L.C.,* 866 F.3d 307, 311–12 (5th Cir. 2017); *Davis*, 728 F.3d at 485. The general rule is that "separate facilities are separate sites." *Davis*, 728 F.3d at 485 (quoting Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16042–01, 16050 (Apr. 20, 1989)).

"A 'narrow' exception to this general rule is that 'geographically separate sites' with 'an inextricable operational connection' – that is, separate sites that 'are used for the same purpose and share the same staff and equipment' – can constitute a single site of employment." *Meadows*, 866 F.3d at 311 (quoting Worker Adjustment and Retraining Notification, 54 Fed. Reg. at 16049). We have previously noted, though, that "two plants across town will rarely be considered a single site." *Id.* (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 934 (5th Cir. 1994)).

Geographically distinct facilities can be aggregated into a single site of employment for purposes of the WARN Act "if [1] they are in reasonable geographic proximity, [2] used for the same purpose, and [3] share the same staff and equipment." 20 C.F.R. § 639.3(i)(3). We have held that "separate facilities are only to be treated as a single site of employment if all three factors . . . are met"; "[a]ny other reading would be inconsistent with the plain language of the regulation." *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1127 (5th Cir. 1997).

Under another regulation, the single site of employment for certain types of workers is either the person's assigned "home base," the site "from which their work is assigned," or the site "to which they report." 20 C.F.R. § 639.3(i)(6). Those covered under this section are "workers whose primary duties require travel from point to point, who are outstationed, or whose

primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons)[.]" *Id.*

On appeal, the plaintiffs argue that the district court erred in concluding that the drilling rigs within an operational area could not be aggregated to form a single site of employment under Section 639.3(i)(3), which the parties refer to as the reasonable geographic proximity test. The plaintiffs alternatively argue that the district court erred in not concluding that the plaintiffs worked at a single site of employment under Section 639.3(i)(6), which the parties refer to as the outstationed employee exception.

We first dispense with issues pertaining to Section 639.3(i)(6). Patterson-UTI argued in its motion for summary judgment that the plaintiffs were not outstationed employees under Section 639.3(i)(6). It argued in the alternative that even if the plaintiffs were such employees, their home bases were the drilling rigs on which they worked, not the operational areas. The plaintiffs did not respond to these arguments in their written briefing and did not discuss Section 639.3(i)(6) at the summary judgment hearing. Though plaintiffs do brief that regulation here, we do "not consider . . . arguments that were not presented to the district court for its consideration in ruling on the motion." *See, e.g.*, *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) (citation omitted).

We now turn to the plaintiffs' arguments regarding Section 639.3(i)(3). The district court concluded that the plaintiffs had failed to provide sufficient evidence to survive summary judgment on any of the three Section 639.3(i)(3) factors. A plaintiff must show all factors are satisfied. *See Viator*, 109 F.3d at 1127. Consequently, we explain only why the district court did not err in concluding that the plaintiffs failed to create a genuine issue of material fact for the first factor. Under that factor, separate facilities are only to be treated as a single site of employment if the separate facilitates are in "reasonable

geographic proximity" to one another. 20 C.F.R. § 639.3(i)(3). We have held that a plaintiff had not "identified specific facts showing that there is a genuine dispute for trial" when he showed "merely that 'an unspecified number of job sites are located an unspecified distance from each other somewhere within an area that is approximately 250 miles wide and 300 miles long.'" *Meadows*, 866 F.3d at 313. Further, the plaintiff had "not pointed to any grouping of job sites in which, between the sites, [the employer] laid off fifty or more employees within the relevant WARN Act period." *Id.*

The plaintiffs argue that they created a genuine issue of material fact because they presented evidence showing that Patterson-UTI employees could drive to another drilling rig and back "within a short time period" and could "see other rigs in the [operational area] from the rig on which they were working." At most, though, the plaintiffs show only that some drilling rigs were within viewing distance of one or more of the others. This is insufficient to create a genuine issue of material fact considering that Patterson-UTI's drilling rigs range from 160- to 180-feet tall. Moreover, the fact that employees could drive from one drilling rig to another in some undisclosed time period also does not create a genuine issue of material fact, considering that the drilling rigs varied from being several miles to hundreds of miles apart and were spread across several counties and states.

Without offering evidence of the distance between any relevant grouping of drilling rigs, the plaintiffs failed to create a genuine issue of material fact that the drilling rigs were within reasonable geographic proximity.

## II.    *Granting summary judgment on all theories of liability*

The plaintiffs argue the district court erred in granting summary judgment on two alternative theories of liability pled by the plaintiffs but not briefed in defendant Patterson-UTI's motion for summary judgment. The

rejected alternatives were a "plant closing" theory under 20 C.F.R. § 639.3(b) and a "truly unusual organizational situations" theory under 20 C.F.R. § 639.3(i)(8).

We find a similar approach to have been taken by the district court in *Meadows*. There, the plaintiff contended that the district court erred in granting summary judgment to the defendant on the "plant-closing claim" and "other articulations of a single site of employment because they were not raised in the [defendant's] summary judgment motion." 866 F.3d at 314. We disagreed. *Id.* We noted that the defendant's summary judgment motion raised the argument that "neither a mass layoff nor plant closing had occurred because no single site of employment had suffered an employment loss of fifty or more people." *Id.* at 315. We held that the "district court did not err in awarding complete summary judgment" because the defendant's summary judgment briefing "should have put [the plaintiff] on notice that he 'had to come forward with all of [his] evidence.'" *Id.* at 315 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

We find no meaningful distinction between the summary judgment briefing in *Meadows* and the briefing on summary judgment here. Patterson-UTI's motion focused on the argument that neither a mass layoff nor a plant closing had occurred because the plaintiffs' employment losses were not a part of an employment loss of fifty or more people at a single site of employment. Thus, it was not error for the district court to grant summary judgment on the plaintiffs' alternative theories of liability because Patterson-UTI's briefing should have put the plaintiffs on notice to come forward with all of their evidence and argument. *See id.*

### III.    *Awarding costs to Patterson-UTI*

Federal Rule of Civil Procedure 54(d)(1) permits a district court to provide costs, other than attorney's fees, to the "prevailing party."  We review a district court's award of costs under Rule 54(d)(1) for an abuse of discretion. *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006).  Such an award of costs can be overturned "[o]nly when a clear abuse of discretion is shown[.]"  *Id.* "There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs."  *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006).

The plaintiffs assert that the district court abused its discretion in awarding costs to Patterson-UTI because the plaintiffs litigated the case in "good faith, and the case involved a 'close and difficult' issue of first impression[.]"  The plaintiffs interpret *Pacheco* to mean it is proper to deny costs when the losing party brought the case in good faith and also satisfied at least one of five factors identified in a treatise as all or most of the reasons the court had previously denied costs.  *See* 448 F.3d at 794.  Plaintiffs misread the precedent.  We made no holding that good faith plus one factor requires denying costs to a prevailing party.  We were explicit on the point: "These reasons are enumerated only for the purpose of exposition. We do not decide whether any of these is a sufficient reason to deny costs."  *Id.* at 794 n.18.  We did hold that "the losing party's good faith is alone insufficient to justify the denial of costs to the prevailing party."  *Id.* at 795.  We later restated the limited holding of that case.  *See Moore v. CITGO Ref. & Chems. Co., L.P.*, 735 F.3d 309, 319 (5th Cir. 2013).

The plaintiffs alternatively argue that the district court abused its discretion in awarding costs to Patterson-UTI.  They argue that because the WARN Act is a remedial statute, courts have declined to award costs to prevailing defendants when the lawsuit was non-frivolous.  The WARN Act,

though, was not the basis for the award of costs. Rule 54(d)(1) was. The plaintiffs have not cited any case supporting that a district court abuses its discretion when it awards costs to a party under Rule 54(d)(1), notwithstanding that the underlying lawsuit was brought under the WARN Act.

The plaintiffs have not shown that the district court abused its discretion in awarding costs to Patterson-UTI.

AFFIRMED.