TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00806-CV






University of Texas and Ellen Wartella, Appellants


v.


Paula Poindexter, Appellee






FROM COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY

NO. 265157, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING



 


C O N C U R R I N G A N D D I S S E N T I N G O P I N I O N


 

 I agree with the majority that the trial court lacked jurisdiction to consider
Poindexter's employment discrimination claims based on chapter 106 of the civil practice and
remedies code. See Tex. Civ. Prac. & Rem. Code Ann. §§ 106.001-.004 (West 2005); Wright
v. Texas Comm'n on Human Rights, No. 03-03-00710-CV, 2005 Tex. App. LEXIS 5904 (Tex.
App.--Austin July 27, 2005, pet. dism'd) (mem. op.). Because the majority fails to recognize or
address the breadth of Poindexter's evidence filed in response to the University's plea to the
jurisdiction, disregarding our standard of review and the trial court's fact-finding function, I
respectfully dissent to the remaining portions of the opinion reversing the trial court's order as to
Poindexter's retaliation and disparate-impact claims. 

 In light of the standard of review and the Supreme Court's clarifying decision this
week in Ricci v. DeStefano, 557 U.S. ___, 2009 U.S. LEXIS 4945 (2009), at a minimum,
Poindexter--the appellee in this interlocutory, accelerated appeal that has been pending in this Court
for over four years--should be given the opportunity to amend her pleadings to cure the
jurisdictional defects found by this Court. See County of Cameron v. Brown, 80 S.W.3d 549, 555
(Tex. 2002).

 In reaching its holding that the trial court lacked jurisdiction because Poindexter did
not comply with the 180-day statutory period for filing her retaliation and disparate-impact claims,
see Tex. Lab. Code Ann. §§ 21.201, .202 (West 2006); Specialty Retailers, Inc. v. DeMoranville,
933 S.W.2d 490, 492 (Tex. 1996) (compliance with 180-day statutory period jurisdictional
prerequisite to bringing suit), the majority--without recognizing or addressing Poindexter's affidavit
with attached documents--concludes that the relevant jurisdictional evidence concerning the timing
and content of Poindexter's communications with the EEOC is undisputed and conclusive. After
deeming the evidence undisputed, the majority then concludes that the "undisputed evidence shows
as a matter of law that Poindexter did not timely file a retaliation charge with the EEOC" and that
her "communications with the EEOC did not satisfy the legal requirements for exhausting a
disparate-impact charge." 

 Based on our standard of review of a plea to the jurisdiction as delineated by the
Texas Supreme Court that we "take as true all evidence favorable to the nonmovant" and "indulge
every reasonable inference and resolve any doubts in the nonmovant's favor," I would conclude that
Poindexter's evidence filed in response to the plea supports the trial court's jurisdiction to consider
her retaliation and disparate-impact claims. See Texas Dep't of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 228 (Tex. 2004). 



Evidence in Response to Plea to the Jurisdiction


 The evidence Poindexter filed in response to the plea to the jurisdiction included an
affidavit from Poindexter with attachments and an affidavit from an expert on employment
discrimination, Bill Hale, a former executive director of the Texas Commission on Human Rights
and other human rights commissions, with attachments. Poindexter averred in relevant part: 


 4. I telephoned the EEOC office in San Antonio and from that conversation I
understood that I could initiate the complaint by filing a brief letter to be
followed by a more detailed letter. That telephone call was the first of more
than a dozen contacts, which included telephone calls, written
correspondence, and a personal visit that I had with the EEOC over a
12-month period.


 5. I filed my complaint by letter dated May 2, 2001. This letter set my
discrimination complaint in motion. In this letter, I referenced retaliatory
actions such as being "blocked from applying for and participating in
professional and leadership opportunities," not receiving performance
evaluations, and not receiving merit increases commensurate with my
performance. (May 2, 2001 Letter to EEOC). This is my original charge that
I sent to the EEOC.


 6. I amended my complaint by letter dated May 23, 2001. . . . (May 23, 2001
Letter to EEOC). This is the amended charge that I sent to the EEOC.


 7. [In my letter dated May 23, 2001], I have a more comprehensive disparate
treatment example, plus a reference to disparate impact, "Since 1992, six
males (five white and one Brazilian) have become full professors in the
Department of Journalism. Four were promoted from associate to full
professor, including one who was promoted the year before my promotion
was denied. During that same time period, no women and no
African-Americans have been promoted to the full professor rank. Statistics
from the Office of Institutional Studies would indicate that this pattern can
be found throughout the University of Texas at Austin. After sending this
letter, the EEOC conducted a disparate impact analysis. By letter dated
February 6, 2002, Defendants indicate that they are responding to a January
25, 2002 request from the EEOC in which the EEOC asked for a list showing
all associate professors within the University of Texas at Austin who have
sought promotion to professor between the dates April 1, 1999 and January
25, 2002. Defendants were asked to specify the name, race, date of hire,
department, college, date(s) the individual applied for promotion to professor,
and final decision concerning each promotion application. . . .


 8. Retaliation is also referenced on page 3 of my May 23, 2001 letter to the
EEOC when I said: "I would like to report that the discriminatory practices
toward me have stopped but that is not the case." I informed the EEOC that
I had been excluded from a Budget Council meeting even though I was an
elected member of the Budget Council. I also reference the fact that I had not
been allowed to apply for the director of the department.


* * *


 10. The August 16, 2001 letter from the EEOC prompted me to send additional
information to the EEOC on October 5, 2001. In my letter, I gave evidence
of disparate treatment within the Journalism Department and College of
Communication and disparate impact across the University. I referenced a
University of Texas System Report that explicitly discussed disparate
treatment of minorities, including African-Americans, in the promotion
process. Furthermore, I provided a very detailed description of more than 10
retaliatory actions taken against me.  . . .

 

 11. After I received a Notice of a Right to Sue, which closed my case, I visited
Marie Minks, the Federal Investigator in San Antonio, where I was permitted
to review the complete EEOC File #360A11118 to identify documents that
I wanted to have copied. The EEOC had in its possession documents from
more than 100 promotion dossiers representing every UT department and
college for a three-year period that had considered the promotion of an
associate professor. I also was able to review the correspondence between
UT and the EEOC, including the questions the EEOC asked UT in order to
conduct their analysis, (January 25, 2002 Letter from Marie Minks to Linda
Millstone), statements from UT's EEOC officer Linda Millstone
(August 2, 2001 Letter from Linda Millstone to Marie Minks), the president,
the provost, the dean of the College of Communication, the dean of the
graduate school, the vice president of research, and the chairs of journalism
and advertising. . . . 


 12. After completing my review of the documents at the EEOC, I informed the
EEOC investigator Marie Minks that the official charge form that had
originally been written up by EEOC had not included retaliation, but should
have, given that I'd raised these issues in my letters of May 2, 2001 and
May 23, 2001. Ms. Minks responded by having me complete and sign an
affidavit to the effect that my charge of retaliation had been overlooked by the
EEOC, which I concluded would address their oversight in the original
discrimination charge. This occurred on May 7, 2002. The EEOC then
issued a Charge and Notice of a Right to Sue Notice for Retaliation. I
followed the instructions from the EEOC officer, as I understood them, and
filed the Notices of the Right to Sue documents with the Texas Commission
on Human Rights. The Texas Commission on Human Rights issued a Notice
of Right to File a Civil Action for EEOC Complaint #360A11118
(Discrimination based on race) and EEOC Complaint #360A201036
(Retaliation) on June 25, 2002.



 Attached to Poindexter's affidavit were the following documents: (i) a letter dated
March 23, 2001, from Poindexter to the University, concerning her disagreement with the decision
denying her promotion and referencing "misrepresentations" and "irregularities in the promotion
process" and her letter in 1996 to the president of the University expressing similar concerns; (ii)
a letter dated April 3, 2001, from the University, responding to Poindexter's letter and attaching
a copy of the section of the University's Handbook of Operating Procedures concerning
promotion guidelines; (iii) a letter dated May 2, 2001, from Poindexter to the EEOC, (iv) a letter
dated May 23, 2001, from Poindexter to the EEOC, referencing and enclosing the promotion
guidelines from the handbook of operating procedures, the "letter of complaint" that she sent to the
University, and other documents, and stating that the "enclosed letter that I sent to the [University]
documents my complaint," and (v) a letter dated October 5, 2001, from Poindexter to the EEOC,
with attached additional documents.

 Poindexter included documents with her letter dated May 23, 2001, and attached a
"List of Enclosed Documents": 

 

 1. EEOC Information Sheet


 2. Names and contact information for people involved in the promotion process


 3. Executive summary prepared for dossier 


 4. Curriculum Vita


 5. A review of [Poindexter's] co-authored book . . .


 6. Letter of complaint to provost which was copied to the president


 7. Document that records vote on [ ] promotion . . . 


 8. Dean's letter


 9. Chair's letter


 10. Budget Council's letter and summaries . . .


 11. Letter from Department of Advertising chair . . . 


 12. Letters from external reviewers


 13. Letter from chair of Faculty Grievance Committee to University's EEOC
officer 


 14. Provost's response to [ ] letter of complaint 


 15. Promotion guidelines from Handbook of Operating Procedures. (1) 


 Poindexter similarly enclosed documents with her letter dated October 5, 2001, and
included a list of those documents: 

 

 Attachment #1: May 3, 1999 Memorandum from President Larry Faulkner on
University of Texas at Austin Promotion Standards

 

 Attachment #2: May 18, 1992 Offer Letter

 

 Attachment #3: Office of Institutional Studies Chart on Faculty
Characteristics

 

 Attachment #4: Letters, Memos, and Historical Background on the African-Americans and the Media Lecture Series . . . 

 

 Attachment #5: Memos, Letters, Notes and Other Documents from the 1995
Journalism Department Chair Search


 Attachment #6: Memo and Press Release Announcing the Appointment of
Associate Professor of Speech to the Chair of the Department

 

 Attachment #7: Confirmation fax and Proposal for Brazil seminar

 

 Attachment #8: Salary Documents for Senior Lecturer and Tenured Associate
Professor Appointments

 

 Attachment #9: A Cohort Analysis of Salaries and Salary Rankings for
1992-93 Assistant and Associate Professors in Journalism


 Attachment #10: Personal Memo for Meeting with Dean Ellen Wartella,
November 4, 1993

 

 Attachment #11: Documentation on the Prairie View A&M University Visit

 

 Attachment #12: Q&A with Dr. Berdahl on Appointment of Ellen Wartella as
Dean of College of Communication

 

 Attachment #13: June 14, 1994 letter from Journalism's Standard 12/Minority
Affairs Committee on Discriminatory Practices Against
Minority Students

 

 Attachment #14: Excerpts from August 7, 1995 University of Texas System
Report of the Committee on the Advancement of Minorities,
March 3, 1997 Article, "The Unheard Voices: Faculty Speak
Out about the Impact of Hopwood on the University of
Texas"


 Attachment #15: E-Mail from Paula Poindexter to Dr. Maxwell McCombs
Discussing Why Dean Ella Wartella Said Her Promotion Was
Denied. (2)



 As to the expert's affidavit, Hale averred in relevant part:


 

 My name is Bill Hale. I have 26 years of experience in enforcing laws prohibiting
employment discrimination as Executive Director of Human Rights Commissions
including the Fort Worth, Texas, Commission and the Texas Commission on Human
Rights. . . .


* * *


 On May 2, 2001, the Plaintiff submitted a letter to the U.S. Equal Employment
Opportunity Commission (EEOC) setting forth in particular detail a series of adverse
personnel actions including denial of promotion to professor she believed were
discriminatory because of her race, African-American/Black. On May 23, 2001, the
Plaintiff submitted a second letter to EEOC in part alleging that discriminatory
personnel actions were continuing subsequent to her communications with the
Provost and the EEOC office, including but not limited to [the] denial of the
opportunity to apply or be appointed to the position of associate chair of the
Journalism Department.


 The contents of these two letters are sufficiently specific to allege employment
discrimination on the basis of race and retaliation. Both letters were submitted to
EEOC within the 180 days from the date of the Defendant's alleged series of adverse
personnel actions. Even though the EEOC did not perfect [the] charges until
June 8, 2001 and May 7, 2002, the correspondence between the Plaintiff and EEOC
was sufficient to trigger the administrative processing of charges of employment
discrimination within 180 days from the date of the Defendant's adverse personnel
actions. Even if EEOC failed to incorporate retaliation in the original perfected
charge signed by the Plaintiff on June 8, 2001, according to Sanchez v. Standard
Brands, Inc.,[ (3)] the retaliation charge could reasonably be expected to grow out of the
Plaintiff's original charge based on the correspondence submitted to EEOC on
May 7, 2001 and May 23, 2001.


* * *


 In her letter dated May 23, 2001 to EEOC, the Plaintiff raised the inference of
disparate impact. EEOC acknowledged this inference during its investigation. 
EEOC requested that the Defendant provide[ ] information regarding the racial
composition of professors at the University of Texas at Austin. The Defendant
provided this information. However, before EEOC could analyze the information
according to the formula set forth in the EEOC Employee Selection Guidelines
(80% rule) to determine any measurable disproportionate impact based on race, the
Plaintiff requested the Right to Sue letter.



Hale also averred to the elements for each of Poindexter's claims. As to the prima facie case for
disparate impact, Hale averred that Poindexter was "not required to statistically establish this impact. 
Such an analysis is done during the administrative investigation." Hale concluded that Poindexter
"established the elements of a prima facie case for both disparate treatment and disparate impact as
well as retaliation for purposes of filing a charge under Title VII and Chapter 21." Attached to
Hale's affidavit was his preliminary expert report. (4)


Retaliation


 In reaching its conclusion that Poindexter did not timely file a retaliation claim, the
majority concludes that the May 2002 charge raising retaliation was not timely and limits its review
to the language found in the body of Poindexter's May 2001 letters and the June 2001 charge. See
Tex. Lab. Code Ann. § 21.055 (West 2006). (5) The majority relies on the omission of the word
"retaliation" or an appropriate "synonym" in Poindexter's May 2001 letters and the verification of
her June 2001 charge, concluding that she "knew (and should have protested, if appropriate) the
charge's contents long before she reviewed her EEOC file in mid-2002." The majority further
concludes that section 21.201(f) of the labor code does not authorize relating the May 2002 charge
back to the May 2001 letters or the June 2001 charge. See id. § 21.201(f). (6) The majority states that
it has found no authority that "a later, separate charge" can relate back to an "earlier, perfected
charge in its pre-perfected form" to support relation back to the letters and that the subject of
retaliation does not relate to or arise from "the subject matter" of the June 2001 charge or the
May 2001 letters. See id. 

 I would conclude that subsections (e), (f), and (g) of section 21.201 authorize the
May 2002 charge to relate back to Poindexter's May 2001 letters, as "original complaints," that were
filed with the EEOC within the 180 days statutory period and that, indulging every reasonable
inference and resolving any doubts in Poindexter's favor, Poindexter's complaints in her letters to
the EEOC with their respective attached documents included retaliation. See id. §§ 21.201(e), (f),
(g), (7) 21.055; Fellows v. Universal Rests., Inc., 701 F.2d 447, 450 (5th Cir. 1983) (underlying policies
not served "by limiting judicial relief to technical niceties of the language used by an often unlettered
and unsophisticated employee in filing his or her initial grievance with EEOC"); Sanchez v. Standard
Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970) ("[S]pecific words of the charge of discrimination
need not presage with literary exactitude the judicial pleadings which may follow."); City of Waco
v. Lopez, 259 S.W.3d 147, 151-52 (Tex. 2008) ("[A]ctionable retaliation exists when an employer
makes an adverse employment decision against an employee who voices opposition to conduct made
unlawful under the CHRA, regardless of whether the employee has already filed a formal complaint
with the Commission."); Hennigan v. I.P. Petroleum Co., 858 S.W.2d 371, 373 (Tex. 1993) (verified
complaint related back to and satisfied any deficiencies in unverified questionnaire that was timely
filed); Texas Tech Univ. v. Finley, 223 S.W.3d 510, 514-15 (Tex. App.--Amarillo 2006, no pet.)
(court, drawing distinction between "original complaint" and "perfected complaint," concludes letter,
the "original complaint," satisfied jurisdictional requirements); Stanley Stores v. Chavana,
909 S.W.2d 554, 558-59 (Tex. App.--Corpus Christi 1995, writ denied) (complaint related back to
date letter sent to EEOC complaining of employment discrimination). 

 The practice of the EEOC is to prepare the "formal charge" after receiving the
complaint from the aggrieved employee. See Brammer v. Martinaire, Inc., 838 S.W.2d 844, 846
(Tex. App.--Amarillo 1992, no writ); see also City of La Joya v. Ortiz, No. 13-06-401-CV,
2007 Tex. App. LEXIS 818, at *11 n.5 (Tex. App.--Corpus Christi Feb. 1, 2007, no pet.) (mem. op.)
(regular practice for Texas Workforce Commission to prepare formal charge). Poindexter contends
the EEOC mistakenly did not include her retaliation claim in the June 2001 charge even though she
had raised the issue in her May 2001 letters. After being notified by Poindexter of the error, the
EEOC's actions of preparing a subsequent charge of retaliation and issuing a right to sue letter as
to her retaliation claim are consistent with Poindexter's position that her initial complaints--the
May 2001 letters with attachments--raised retaliation within the 180-day statutory period but that
the EEOC mistakenly failed to include retaliation in the June 2001 charge. See Federal Express
Corp. v. Holowecki, 128 S.Ct. 1147, 1160 (2008) ("Documents filed by an employee with the EEOC
should be construed, to the extent consistent with permissible rules of interpretation, to protect the
employee's rights and statutory remedies."); Bartosh v. Sam Houston State Univ., 259 S.W.3d 317,
321 (Tex. App.--Texarkana 2008, pet. filed) (court to "construe employment discrimination charges
with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laypersons
untutored in the rules of pleading, though requiring that the charge contain an adequate factual basis
so that it puts the employer on notice of the existence and nature of the charges") (citation omitted).

 The right to sue letters issued by the EEOC and the TCHR on Poindexter's retaliation
claim are additional support that Poindexter exhausted her administrative remedies as to that claim. 
See Ortiz, 2007 Tex. App. LEXIS 818, at *9 ("[T]he fact that the Texas Workforce Commission
issued a right to sue letter, instead of dismissing the complaint as untimely, is additional
evidence that the complaint was timely filed."); Westbrook v. Water Valley Indep. School Dist.,
No. 03-04-00449-CV, 2006 Tex. App. LEXIS 3845, at *10 (Tex. App.--Austin May 5, 2006, pet.
denied) (mem. op.) ("Although an employee is not required to obtain a right to sue letter prior to
filing suit, if the employee has received one, it evidences that she has exhausted her administrative
remedies before the TCHR."); see also Tex. Lab. Code Ann. § 21.202(b) ("The commission shall
dismiss an untimely complaint.").

 I would, therefore, conclude that the trial court could have found that the evidence,
viewed favorably, supports that Poindexter timely filed her initial complaint of retaliation with the
EEOC in May 2001 that was perfected by the May 2002 charge to support the trial court's
jurisdiction. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990) (when no findings of fact
or conclusions of law are requested or filed, appellate court implies "that the trial court made all the
findings necessary to support its judgment"). (8) 


Disparate Impact


 To support its conclusion that Poindexter failed to comply with the 180-day statutory
period for filing a disparate-impact claim, the majority concludes that Poindexter failed to identify
a facially neutral policy in the perfected complaints and in her correspondence to the EEOC. 
See Pacheco v. Mineta, 448 F.3d 783, 791 (5th Cir. 2006) ("A disparate-impact plaintiff must show
(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected
class."); see generally Ricci v. DeStefano, 2009 U.S. LEXIS 4945 (explaining disparate-impact
claims and applying standard in summary judgment context). (9) The majority concludes that her
"administrative charges" "facially" allege only "disparate treatment" and "retaliation," " identif[y]
no neutral employment policy," and complain only of past incidents of "retaliation" and "disparate
treatment," and that her letters to the EEOC in May and October 2001 also failed because she did
not identify a facially neutral policy that "disproportionally harmed black employees." (10) 

 A complaint to the EEOC is not limited by its express words, but is "limited only by
the scope of the EEOC investigation that could reasonably be expected to grow out of the initial
charges of discrimination." See Fellows, 701 F.2d at 450-51. The Court of Appeals for the Fifth
Circuit explained the policy reason for this rule:


 The Civil Rights Act is designed to protect those who are least able to protect
themselves. Complainants to the EEOC are seldom [represented by] lawyers. To
compel the charging party to specifically articulate in a charge filed with the
Commission the full panoply of discrimination which he may have suffered may
cause the very persons Title VII was designed to protect to lose that protection
because they are ignorant of or unable to thoroughly describe the discriminatory
practices to which they are subjected. . . . [A] cause of action for Title VII
employment discrimination may be based, not only upon the specific complaints
made by the employee's initial EEOC charge, but also upon any kind of
discrimination like or related to the charge's allegations, limited only by the scope
of the EEOC investigation that could reasonably be expected to grow out of the
initial charges of discrimination.

 


Id. (internal citations omitted). Additionally, a disparate-impact claim may be based upon the
"decision-making process" as the challenged "employment practice." See Tex. Lab. Code Ann.
§ 21.122(c) (West 2006) ("decision-making process may be analyzed as one employment practice"
when "elements of a respondent's decision-making process are not capable of separation for
analysis"); (11)
 see also 42 U.S.C. §2000e-2(k)(1)(B)(i) (2009); Ricci, 2009 U.S. LEXIS 4945, at *34. 
With these principles in mind, I turn then to a review of the evidence to determine if it supports a
finding that an investigation of disparate impact based upon "a particular employment practice"
of the University "could reasonably be expected to grow out" of Poindexter's initial charges. 
See Tex. Lab. Code Ann. § 21.122; Miranda, 133 S.W.3d at 228; Fellows, 701 F.2d at 450-51. 

 During the 180-day statutory period, Poindexter provided the EEOC with copies of
the University's promotion guidelines from the handbook of operating procedures and her letter to
the University documenting her complaint. She addressed the promotion process in her letter dated
May 23, 2001, and quoted statistics showing a similar pattern throughout the University adverse to
women and African-Americans. In the letter, she states: 

 

 Since 1992, six males (five white and one Brazilian) have become full professors in
the Department of Journalism. Four were promoted from associate to full professor,
including the one who was promoted the year before my promotion was denied. 
During that same period, no women and no African-Americans have been promoted
to the full professor rank. Statistics from the Office of Institutional Studies would
indicate that this pattern can be found throughout The University of Texas at Austin.


 

 During the EEOC investigation, Poindexter provided the EEOC with a copy of the
Report of the Committee on the Advancement of Minorities that states as to the University's
guidelines:


 Although there are System-wide guidelines for granting promotions and tenure, the
component institutions--and often smaller academic units (schools, colleges,
divisions, etc.)--set forth their own specific criteria for meeting the guidelines. 
Based on interviews with faculty, it is apparent to the Committee that criteria often
are not clear or explicit. In addition, interpretation of the criteria is not uniform,
often being left to department heads and deans. Further, criteria are often very
general and easily lead to interpretations that may exclude minorities. Thus, while
the written criteria may not be discriminatory, the unspoken judgments and
interpretations may have that effect. (12)

 


Hale averred that the EEOC acknowledged Poindexter's "inference [of disparate impact] during its
investigation" based on the fact that the "EEOC requested that the Defendant provide[ ] information
regarding the racial composition of professors at the University of Texas at Austin." Two categories
of information that the EEOC requested from the University were: 


 1. A list showing all Associate Professors within the University of Texas at
Austin who have sought promotion to Professor between the dates
April 1, 1999 and January 25, 2002. For each individual listed, please
provide name, race, date of hire, department, college, date(s) that the
individual applied for promotion to Professor, and final decision concerning
each promotion application.

 

 2. For each individual identified in the list of applicants for promotion to full
Professor, please provide a copy of each recommendation statement from the
appropriate Department Budget Council, Department Chairman/Director, and
Dean; and a copy of each "Recommendation for Change in Academic
Rank/Status" form.


 

The majority's conclusion that the trial court did not have jurisdiction because Poindexter failed to
identify a neutral policy in her administrative charge improperly disregards evidence favorable to
Poindexter, delving into the merits of her disparate-impact claim. See Bland Ind. Sch. Dist. v. Blue,
34 S.W.3d 547, 554 (Tex. 2000). Based on the evidence before the trial court, I would conclude that
the trial court could have found that the evidence favorable to Poindexter supports a finding that an
investigation of disparate impact based on a "particular employment practice" of the University or
its "decision-making process" for promotions "could reasonably be expected to grow out of [her]
initial charges of discrimination." See Tex. Lab. Code Ann. § 21.122; Miranda, 133 S.W.3d at 228;
Fellows, 701 F.2d at 450-51. (13) 

 The majority finds Pacheco "highly instructive" in reaching its holding "that, as a
matter of law, Poindexter's communications with the EEOC did not satisfy the legal requirements
for exhausting a disparate-impact charge." Pacheco is distinguishable on its facts. In Pacheco, the
Court of Appeals for the Fifth Circuit affirmed the dismissal of the plaintiff's disparate-impact claim
for failure to exhaust administrative remedies, but the court sets forth the appropriate analysis as
fact-intensive: "We engage in fact-intensive analysis of the statement given by the plaintiff in the
administrative charge, and look slightly beyond its four corners, to its substance rather than its label."
448 F.3d at 789. In contrast to the correspondence between Poindexter and the EEOC, the plaintiff
in Pacheco was sent a letter notifying him of the claim that was accepted for investigation (14) and that
"if he objected to the way his claim was stated, he should contact the Office within five days"; the
plaintiff did not respond. Id. at 786. The court also did not address conflicting evidence as to the
substance of the "administrative charge" and the "initial charges of discrimination." See, e.g., id.
at 792 n.15 (newspaper article that acknowledged statistical underrepresentation of Hispanics in
federal agencies not relevant to exhaustion question because "it was not submitted to the EEO, but
was produced by [the plaintiff], after suit was filed in district court"). 

 In conclusion, because the majority disregards evidence favorable to Poindexter, the
non-movant, I concur only in the portion of the opinion reversing the trial court's order as to
Poindexter's claims based on chapter 106 of the civil practice and remedies code and respectfully
dissent to the remaining portions of the opinion reversing the trial court's order on a plea to the
jurisdiction as to Poindexter's retaliation and disparate-impact claims and short-circuiting this
litigant's day in court. (15) 


 


 __________________________________________

 Jan P. Patterson, Justice


Before Chief Justice Jones, Justices Patterson and Puryear
1. The listed documents are not attached to the letter in the record. Some of the documents
are in the record.
2. Although all of the documents are not included in the record, some of the attachments were
referenced and discussed during the hearing on the plea to the jurisdiction. 
3. Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970).
4. The University filed a reply to Poindexter's response to the plea to the jurisdiction,
attaching an affidavit from Linda H. Millstone. She averred: 


 1. I am currently the Deputy to the Vice President for Employee and Campus
Services and the Director of Employment Opportunity Services at the
University of Texas in Austin . . . . 


* * *

 

 6. No language in [the June 2001 charge], or in the communications I received
from the EEOC concerning that charge, reflected any indication that
Dr. Poindexter wished to assert any discrimination claim other than one for
disparate treatment. At no time during the administrative process was I aware
that Dr. Poindexter was asserting a claim of retaliation until the EEOC
provided [the May 2002 charge]. At no time during the administrative
process did I ever see any document reflecting that Dr. Poindexter was
asserting a claim of disparate impact. 


The University also attached the EEOC's investigation plan and a letter dated August 16, 2001, from
an EEOC investigator to Poindexter providing the University's stated reasons for denying her
promotion and asking for additional information. 
5. Section 21.055 of the labor code states:


 An employer, labor union, or employment agency commits an unlawful employment
practice if the employer, labor union, or employment agency retaliates or
discriminates against a person who, under this chapter:


 (1) opposes a discriminatory practice;


 (2) makes or files a charge;


 (3) files a complaint; or


 (4) testifies, assists, or participates in any manner in an investigation,
proceeding, or hearing.


Tex. Lab. Code Ann. § 21.055 (West 2006). 
6. Section 21.201 of the labor code sets out the requirements for filing an administrative
complaint of employment discrimination. See id. § 21.201 (West 2006). Subsection (f) of this
section states:


 (f) An amendment to a complaint alleging additional facts that constitute
unlawful employment practices relating to or arising from the subject matter
of the original complaint relates back to the date the complaint was first
received by the commission.


Id. § 21.201(f). 
7. Subsections (e) and (g) of section 21.201 read:


 (e) A complaint may be amended to cure technical defects or omissions,
including a failure to verify the complaint or to clarify and amplify an
allegation made in the complaint.


* * *


 (g) If a perfected complaint is not received by the commission within 180 days
of the alleged unlawful employment practice, the commission shall notify the
respondent that a complaint has been filed and that the process of perfecting
the complaint is in progress.


Id. § 21.201(e), (g). 
8. Turning a blind eye to the evidence, the majority fails entirely to address Poindexter's
affidavit; it only addresses Hale's statements in his affidavit that "the contents of [the May] letters
are sufficiently specific to allege employment discrimination on the basis of race and retaliation" and
that "a retaliation charge could reasonably be expected to grow out of" Poindexter's May
correspondence. As to these statements, the majority concludes that Hale's assertions are legal
conclusions that do not constitute probative evidence. I agree that legal conclusions "with no
supporting facts or rationale" do not constitute probative evidence, but Hale averred in part as an
expert on the EEOC's practices in conducting investigations of employment discrimination claims
and as to the EEOC's particular actions in this case. See McIntyre v. Ramirez, 109 S.W.3d 741, 749
(Tex. 2003). At the hearing on the plea to the jurisdiction, the University objected to Hale's affidavit
in part on the ground that it contained legal conclusions. The trial court overruled the University's
objection "to the extent that the Court will allow the affidavit for the limited purposes of his
expertise of the policies and practices [of the EEOC]. . . . I'm going to allow it for the purposes of
his affidavit, and testimony as it relates to the evaluation of cases, and claims, and a determination
or practice as it relates to this is what the investigation would look like, and this is what they do and
does it cover these issues, but the ultimate issue or legal issue is made by the Court."
9. As the Supreme Court explained, 


 Title VII prohibits both intentional discrimination (known as "disparate treatment")
as well as, in some cases, practices that are not intended to discriminate but in fact
have a disproportionately adverse effect on minorities (known as "disparate impact").


* * *


 Under the disparate-impact statute, a plaintiff establishes a prima facie violation by
showing that an employer uses a "particular employment practice that causes a
disparate impact on the basis of race, color, religion, sex, or national origin."


2009 U.S. LEXIS 4945, at *33-34 (quoting 42 U.S.C. §2000e-2(k)(1)(A)(i) (2009)); see also id. at
*84 (Ginsburg, J., dissenting) ("In assessing claims of race discrimination, '[c]ontext matters.'"
(quoting Grutter v. Bollinger, 539 U.S. 306, 327 (2003))). 
10. The majority also concludes that the October 2001 letter was irrelevant in determining
whether Poindexter's charge alleged disparate impact. 
11. Section 21.122 of the labor code provides the burden of proof in disparate impact cases
in pertinent part: 


 (a) An unlawful employment practice based on disparate impact is established
under this chapter only if: 


 (1) a complainant demonstrates that a respondent uses a particular
employment practice that causes a disparate impact on the basis of
race, color, sex, national origin, religion, or disability and the
respondent fails to demonstrate that the challenged practice is
job-related for the position in question and consistent with business
necessity; or . . .

 

* * *


 (c) To demonstrate that a particular employment practice causes a disparate
impact, the complainant must demonstrate that each particular challenged
employment practice causes a disparate impact, except that if the complainant
demonstrates to the satisfaction of the court that the elements of a
respondent's decision-making process are not capable of separation for
analysis, that decision-making process may be analyzed as one employment
practice.


 (d) If the respondent demonstrates that a specific practice does not cause a
disparate impact, the respondent may not be required to demonstrate that the
practice is consistent with business necessity.


Tex. Lab. Code Ann. § 21.122 (West 2006).

12. Consistently, in her briefing to this Court, Poindexter identifies the "six-prong promotion
policy of the University of Texas," and her attorney at the hearing on the plea to the jurisdiction
identified "the criteria used by the University; that those criteria, as a whole . . . that these unwritten,
unknown standards and policies that they use . . . have disparate impact on racial and ethnic
minorities."
13. The trial court also could have concluded that an investigation of retaliation "could
reasonably be expected to grow out of [Poindexter's] initial charges of discrimination" as an
alternative basis for affirming the trial court's denial of the University's plea to the jurisdiction as
to her retaliation claims. See Fellows v. Universal Rests., Inc., 701 F.2d 447, 450-51 (5th Cir. 1983);
Texas Dep't of Crim. Justice v. Young, No. 09-07-00635-CV, 2008 Tex. App. LEXIS 7350, at
*17-19 (Tex. App.--Beaumont Oct. 2, 2008, no pet.) (mem. op.) (retaliation claim "factually related
claim [ ] that could reasonably be expected to grow out of" an investigation of the plaintiff's race
and gender discrimination complaints) (citation omitted); City of La Joya v. Ortiz,
No. 13-06-401-CV, 2007 Tex. App. LEXIS 818, at *13-15 (Tex. App.--Corpus Christi Feb. 1, 2007,
no pet.) (mem. op.) (retaliation claim stated in intake questionnaire but not alleged in administrative
charge "could be expected to grow out of her charge").
14. The claim stated in the letter was: "Whether the FAA treated you differently, based on
your national origin (Hispanic), when you were not selected for a supervisor's job." Pacheco
v. Mineta, 448 F.3d 783, 786 (5th Cir. 2006). 
15. An alternative ground for affirming the trial court as to both the retaliation and the
disparate-impact claims would be to imply that the trial court in its discretion denied the plea to the
jurisdiction to "await a fuller development of the case." See Texas Dep't of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 227 (Tex. 2004); Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.
1990). The majority concludes that an abuse-of-discretion standard does not apply "because the trial
court did not purport to exercise its discretion in this regard." Because the trial court did not make
findings of fact and conclusion of law, however, we are to affirm the trial court's order denying the
plea to the jurisdiction if it can be upheld on any legal theory that finds support in the evidence. 
See Miranda, 133 S.W.3d at 227; Worford, 801 S.W.2d at 109 ("The judgment must be affirmed if
it can be upheld on any legal theory that finds support in the evidence.").