# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00806-CV

**University of Texas and Ellen Wartella, Appellants**

**v.**

**Paula Poindexter, Appellee**

## FROM COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY
## NO. 265157, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## C O N C U R R I N G   A N D   D I S S E N T I N G   O P I N I O N

I agree with the majority that the trial court lacked jurisdiction to consider Poindexter's employment discrimination claims based on chapter 106 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 106.001-.004 (West 2005); *Wright v. Texas Comm'n on Human Rights*, No. 03-03-00710-CV, 2005 Tex. App. LEXIS 5904 (Tex. App.—Austin July 27, 2005, pet. dism'd) (mem. op.). Because the majority fails to recognize or address the breadth of Poindexter's evidence filed in response to the University's plea to the jurisdiction, disregarding our standard of review and the trial court's fact-finding function, I respectfully dissent to the remaining portions of the opinion reversing the trial court's order as to Poindexter's retaliation and disparate-impact claims.

In light of the standard of review and the Supreme Court's clarifying decision this week in *Ricci v. DeStefano*, 557 U.S. ___, 2009 U.S. LEXIS 4945 (2009), at a minimum,

Poindexter—the appellee in this interlocutory, accelerated appeal that has been pending in this Court for over four years—should be given the opportunity to amend her pleadings to cure the jurisdictional defects found by this Court. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

In reaching its holding that the trial court lacked jurisdiction because Poindexter did not comply with the 180-day statutory period for filing her retaliation and disparate-impact claims, *see* Tex. Lab. Code Ann. §§ 21.201, .202 (West 2006); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (compliance with 180-day statutory period jurisdictional prerequisite to bringing suit), the majority—without recognizing or addressing Poindexter's affidavit with attached documents—concludes that the relevant jurisdictional evidence concerning the timing and content of Poindexter's communications with the EEOC is undisputed and conclusive. After deeming the evidence undisputed, the majority then concludes that the "undisputed evidence shows as a matter of law that Poindexter did not timely file a retaliation charge with the EEOC" and that her "communications with the EEOC did not satisfy the legal requirements for exhausting a disparate-impact charge."

Based on our standard of review of a plea to the jurisdiction as delineated by the Texas Supreme Court that we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor," I would conclude that Poindexter's evidence filed in response to the plea supports the trial court's jurisdiction to consider her retaliation and disparate-impact claims. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

2

*Evidence in Response to Plea to the Jurisdiction*

The evidence Poindexter filed in response to the plea to the jurisdiction included an affidavit from Poindexter with attachments and an affidavit from an expert on employment discrimination, Bill Hale, a former executive director of the Texas Commission on Human Rights and other human rights commissions, with attachments. Poindexter averred in relevant part:

4. I telephoned the EEOC office in San Antonio and from that conversation I understood that I could initiate the complaint by filing a brief letter to be followed by a more detailed letter. That telephone call was the first of more than a dozen contacts, which included telephone calls, written correspondence, and a personal visit that I had with the EEOC over a 12-month period.

5. I filed my complaint by letter dated May 2, 2001. This letter set my discrimination complaint in motion. In this letter, I referenced retaliatory actions such as being "blocked from applying for and participating in professional and leadership opportunities," not receiving performance evaluations, and not receiving merit increases commensurate with my performance. (May 2, 2001 Letter to EEOC). This is my original charge that I sent to the EEOC.

6. I amended my complaint by letter dated May 23, 2001. . . . (May 23, 2001 Letter to EEOC). This is the amended charge that I sent to the EEOC.

7. [In my letter dated May 23, 2001], I have a more comprehensive disparate treatment example, plus a reference to disparate impact, "Since 1992, six males (five white and one Brazilian) have become full professors in the Department of Journalism. Four were promoted from associate to full professor, including one who was promoted the year before my promotion was denied. During that same time period, no women and no African-Americans have been promoted to the full professor rank. Statistics from the Office of Institutional Studies would indicate that this pattern can be found throughout the University of Texas at Austin. After sending this letter, the EEOC conducted a disparate impact analysis. By letter dated February 6, 2002, Defendants indicate that they are responding to a January 25, 2002 request from the EEOC in which the EEOC asked for a list showing

3

all associate professors within the University of Texas at Austin who have sought promotion to professor between the dates April 1, 1999 and January 25, 2002. Defendants were asked to specify the name, race, date of hire, department, college, date(s) the individual applied for promotion to professor, and final decision concerning each promotion application. . . .

8. Retaliation is also referenced on page 3 of my May 23, 2001 letter to the EEOC when I said: "I would like to report that the discriminatory practices toward me have stopped but that is *not* the case." I informed the EEOC that I had been excluded from a Budget Council meeting even though I was an elected member of the Budget Council. I also reference the fact that I had not been allowed to apply for the director of the department.

* * *

10. The August 16, 2001 letter from the EEOC prompted me to send additional information to the EEOC on October 5, 2001. In my letter, I gave evidence of disparate treatment within the Journalism Department and College of Communication and disparate impact across the University. I referenced a University of Texas System Report that explicitly discussed disparate treatment of minorities, including African-Americans, in the promotion process. Furthermore, I provided a very detailed description of more than 10 retaliatory actions taken against me. . . .

11. After I received a Notice of a Right to Sue, which closed my case, I visited Marie Minks, the Federal Investigator in San Antonio, where I was permitted to review the complete EEOC File #360A11118 to identify documents that I wanted to have copied. The EEOC had in its possession documents from more than 100 promotion dossiers representing every UT department and college for a three-year period that had considered the promotion of an associate professor. I also was able to review the correspondence between UT and the EEOC, including the questions the EEOC asked UT in order to conduct their analysis, (January 25, 2002 Letter from Marie Minks to Linda Millstone), statements from UT's EEOC officer Linda Millstone (August 2, 2001 Letter from Linda Millstone to Marie Minks), the president, the provost, the dean of the College of Communication, the dean of the graduate school, the vice president of research, and the chairs of journalism and advertising. . . .

12. After completing my review of the documents at the EEOC, I informed the EEOC investigator Marie Minks that the official charge form that had originally been written up by EEOC had not included retaliation, but should

4

have, given that I'd raised these issues in my letters of May 2, 2001 and May 23, 2001. Ms. Minks responded by having me complete and sign an affidavit to the effect that my charge of retaliation had been overlooked by the EEOC, which I concluded would address their oversight in the original discrimination charge. This occurred on May 7, 2002. The EEOC then issued a Charge and Notice of a Right to Sue Notice for Retaliation. I followed the instructions from the EEOC officer, as I understood them, and filed the Notices of the Right to Sue documents with the Texas Commission on Human Rights. The Texas Commission on Human Rights issued a Notice of Right to File a Civil Action for EEOC Complaint #360A11118 (Discrimination based on race) and EEOC Complaint #360A201036 (Retaliation) on June 25, 2002.

Attached to Poindexter's affidavit were the following documents: (i) a letter dated March 23, 2001, from Poindexter to the University, concerning her disagreement with the decision denying her promotion and referencing "misrepresentations" and "irregularities in the promotion process" and her letter in 1996 to the president of the University expressing similar concerns; (ii) a letter dated April 3, 2001, from the University, responding to Poindexter's letter and attaching a copy of the section of the University's *Handbook of Operating Procedures* concerning promotion guidelines; (iii) a letter dated May 2, 2001, from Poindexter to the EEOC, (iv) a letter dated May 23, 2001, from Poindexter to the EEOC, referencing and enclosing the promotion guidelines from the handbook of operating procedures, the "letter of complaint" that she sent to the University, and other documents, and stating that the "enclosed letter that I sent to the [University] documents my complaint," and (v) a letter dated October 5, 2001, from Poindexter to the EEOC, with attached additional documents.

Poindexter included documents with her letter dated May 23, 2001, and attached a "List of Enclosed Documents":

5

1. EEOC Information Sheet

2. Names and contact information for people involved in the promotion process

3. Executive summary prepared for dossier

4. Curriculum Vita

5. A review of [Poindexter's] co-authored book . . .

6. Letter of complaint to provost which was copied to the president

7. Document that records vote on [ ] promotion . . .

8. Dean's letter

9. Chair's letter

10. Budget Council's letter and summaries . . .

11. Letter from Department of Advertising chair . . .

12. Letters from external reviewers

13. Letter from chair of Faculty Grievance Committee to University's EEOC officer

14. Provost's response to [ ] letter of complaint

15. Promotion guidelines from Handbook of Operating Procedures.[1]

Poindexter similarly enclosed documents with her letter dated October 5, 2001, and included a list of those documents:

---

[1] The listed documents are not attached to the letter in the record. Some of the documents are in the record.

Attachment #1:  May 3, 1999 Memorandum from President Larry Faulkner on University of Texas at Austin Promotion Standards

Attachment #2:  May 18, 1992 Offer Letter

Attachment #3:  Office of Institutional Studies Chart on Faculty Characteristics

Attachment #4:  Letters, Memos, and Historical Background on the African-Americans and the Media Lecture Series . . .

Attachment #5:  Memos, Letters, Notes and Other Documents from the 1995 Journalism Department Chair Search

Attachment #6:  Memo and Press Release Announcing the Appointment of Associate Professor of Speech to the Chair of the Department

Attachment #7:  Confirmation fax and Proposal for Brazil seminar

Attachment #8:  Salary Documents for Senior Lecturer and Tenured Associate Professor Appointments

Attachment #9:  A Cohort Analysis of Salaries and Salary Rankings for 1992-93 Assistant and Associate Professors in Journalism

Attachment #10:  Personal Memo for Meeting with Dean Ellen Wartella, November 4, 1993

Attachment #11:  Documentation on the Prairie View A&M University Visit

Attachment #12:  Q&A with Dr. Berdahl on Appointment of Ellen Wartella as Dean of College of Communication

Attachment #13:  June 14, 1994 letter from Journalism's Standard 12/Minority Affairs Committee on Discriminatory Practices Against Minority Students

Attachment #14:  Excerpts from August 7, 1995 *University of Texas System Report of the Committee on the Advancement of Minorities*, March 3, 1997 Article, "The Unheard Voices: Faculty Speak Out about the Impact of Hopwood on the University of Texas"

Attachment #15:    E-Mail from Paula Poindexter to Dr. Maxwell McCombs Discussing Why Dean Ella Wartella Said Her Promotion Was Denied.[2]

As to the expert's affidavit, Hale averred in relevant part:

My name is Bill Hale. I have 26 years of experience in enforcing laws prohibiting employment discrimination as Executive Director of Human Rights Commissions including the Fort Worth, Texas, Commission and the Texas Commission on Human Rights. . . .

* * *

On May 2, 2001, the Plaintiff submitted a letter to the U.S. Equal Employment Opportunity Commission (EEOC) setting forth in particular detail a series of adverse personnel actions including denial of promotion to professor she believed were discriminatory because of her race, African-American/Black. On May 23, 2001, the Plaintiff submitted a second letter to EEOC in part alleging that discriminatory personnel actions were continuing subsequent to her communications with the Provost and the EEOC office, including but not limited to [the] denial of the opportunity to apply or be appointed to the position of associate chair of the Journalism Department.

The contents of these two letters are sufficiently specific to allege employment discrimination on the basis of race and retaliation. Both letters were submitted to EEOC within the 180 days from the date of the Defendant's alleged series of adverse personnel actions. Even though the EEOC did not perfect [the] charges until June 8, 2001 and May 7, 2002, the correspondence between the Plaintiff and EEOC was sufficient to trigger the administrative processing of charges of employment discrimination within 180 days from the date of the Defendant's adverse personnel actions. Even if EEOC failed to incorporate retaliation in the original perfected charge signed by the Plaintiff on June 8, 2001, according to Sanchez v. Standard Brands, Inc.,[3] the retaliation charge could reasonably be expected to grow out of the Plaintiff's original charge based on the correspondence submitted to EEOC on May 7, 2001 and May 23, 2001.

---

[2] Although all of the documents are not included in the record, some of the attachments were referenced and discussed during the hearing on the plea to the jurisdiction.

[3] *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).

* * *

In her letter dated May 23, 2001 to EEOC, the Plaintiff raised the inference of disparate impact. EEOC acknowledged this inference during its investigation. EEOC requested that the Defendant provide[ ] information regarding the racial composition of professors at the University of Texas at Austin. The Defendant provided this information. However, before EEOC could analyze the information according to the formula set forth in the EEOC Employee Selection Guidelines (80% rule) to determine any measurable disproportionate impact based on race, the Plaintiff requested the Right to Sue letter.

Hale also averred to the elements for each of Poindexter's claims. As to the prima facie case for disparate impact, Hale averred that Poindexter was "not required to statistically establish this impact. Such an analysis is done during the administrative investigation." Hale concluded that Poindexter "established the elements of a prima facie case for both disparate treatment and disparate impact as well as retaliation for purposes of filing a charge under Title VII and Chapter 21." Attached to Hale's affidavit was his preliminary expert report.[4]

---

[4] The University filed a reply to Poindexter's response to the plea to the jurisdiction, attaching an affidavit from Linda H. Millstone. She averred:

  1.    I am currently the Deputy to the Vice President for Employee and Campus Services and the Director of Employment Opportunity Services at the University of Texas in Austin . . . .

* * *

  6.    No language in [the June 2001 charge], or in the communications I received from the EEOC concerning that charge, reflected any indication that Dr. Poindexter wished to assert any discrimination claim other than one for disparate treatment. At no time during the administrative process was I aware that Dr. Poindexter was asserting a claim of retaliation until the EEOC provided [the May 2002 charge]. At no time during the administrative process did I ever see any document reflecting that Dr. Poindexter was asserting a claim of disparate impact.

*Retaliation*

In reaching its conclusion that Poindexter did not timely file a retaliation claim, the majority concludes that the May 2002 charge raising retaliation was not timely and limits its review to the language found in the body of Poindexter's May 2001 letters and the June 2001 charge. *See* Tex. Lab. Code Ann. § 21.055 (West 2006).[5] The majority relies on the omission of the word "retaliation" or an appropriate "synonym" in Poindexter's May 2001 letters and the verification of her June 2001 charge, concluding that she "knew (and should have protested, if appropriate) the charge's contents long before she reviewed her EEOC file in mid-2002." The majority further concludes that section 21.201(f) of the labor code does not authorize relating the May 2002 charge

---

The University also attached the EEOC's investigation plan and a letter dated August 16, 2001, from an EEOC investigator to Poindexter providing the University's stated reasons for denying her promotion and asking for additional information.

[5] Section 21.055 of the labor code states:

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

    (1)    opposes a discriminatory practice;

    (2)    makes or files a charge;

    (3)    files a complaint; or

    (4)    testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

Tex. Lab. Code Ann. § 21.055 (West 2006).

10

back to the May 2001 letters or the June 2001 charge. *See id*. § 21.201(f).[6] The majority states that it has found no authority that "a later, separate charge" can relate back to an "earlier, perfected charge in its pre-perfected form" to support relation back to the letters and that the subject of retaliation does not relate to or arise from "the subject matter" of the June 2001 charge or the May 2001 letters. *See id*.

I would conclude that subsections (e), (f), and (g) of section 21.201 authorize the May 2002 charge to relate back to Poindexter's May 2001 letters, as "original complaints," that were filed with the EEOC within the 180 days statutory period and that, indulging every reasonable inference and resolving any doubts in Poindexter's favor, Poindexter's complaints in her letters to the EEOC with their respective attached documents included retaliation. *See id*. §§ 21.201(e), (f), (g),[7] 21.055; *Fellows v. Universal Rests., Inc*., 701 F.2d 447, 450 (5th Cir. 1983) (underlying policies

---

[6] Section 21.201 of the labor code sets out the requirements for filing an administrative complaint of employment discrimination. *See id*. § 21.201 (West 2006). Subsection (f) of this section states:

> (f)    An amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission.

*Id*. § 21.201(f).

[7] Subsections (e) and (g) of section 21.201 read:

> (e)    A complaint may be amended to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an allegation made in the complaint.

> * * *

> (g)    If a perfected complaint is not received by the commission within 180 days

11

not served "by limiting judicial relief to technical niceties of the language used by an often unlettered and unsophisticated employee in filing his or her initial grievance with EEOC"); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) ("[S]pecific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow."); *City of Waco v. Lopez*, 259 S.W.3d 147, 151-52 (Tex. 2008) ("[A]ctionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct made unlawful under the CHRA, regardless of whether the employee has already filed a formal complaint with the Commission."); *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 373 (Tex. 1993) (verified complaint related back to and satisfied any deficiencies in unverified questionnaire that was timely filed); *Texas Tech Univ. v. Finley*, 223 S.W.3d 510, 514-15 (Tex. App.—Amarillo 2006, no pet.) (court, drawing distinction between "original complaint" and "perfected complaint," concludes letter, the "original complaint," satisfied jurisdictional requirements); *Stanley Stores v. Chavana*, 909 S.W.2d 554, 558-59 (Tex. App.—Corpus Christi 1995, writ denied) (complaint related back to date letter sent to EEOC complaining of employment discrimination).

The practice of the EEOC is to prepare the "formal charge" after receiving the complaint from the aggrieved employee. *See Brammer v. Martinaire, Inc.*, 838 S.W.2d 844, 846 (Tex. App.—Amarillo 1992, no writ); *see also City of La Joya v. Ortiz*, No. 13-06-401-CV, 2007 Tex. App. LEXIS 818, at *11 n.5 (Tex. App.—Corpus Christi Feb. 1, 2007, no pet.) (mem. op.)

---

of the alleged unlawful employment practice, the commission shall notify the respondent that a complaint has been filed and that the process of perfecting the complaint is in progress.

*Id*. § 21.201(e), (g).

(regular practice for Texas Workforce Commission to prepare formal charge). Poindexter contends the EEOC mistakenly did not include her retaliation claim in the June 2001 charge even though she had raised the issue in her May 2001 letters. After being notified by Poindexter of the error, the EEOC's actions of preparing a subsequent charge of retaliation and issuing a right to sue letter as to her retaliation claim are consistent with Poindexter's position that her initial complaints—the May 2001 letters with attachments—raised retaliation within the 180-day statutory period but that the EEOC mistakenly failed to include retaliation in the June 2001 charge. *See Federal Express Corp. v. Holowecki*, 128 S.Ct. 1147, 1160 (2008) ("Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies."); *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. filed) (court to "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laypersons untutored in the rules of pleading, though requiring that the charge contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges") (citation omitted).

The right to sue letters issued by the EEOC and the TCHR on Poindexter's retaliation claim are additional support that Poindexter exhausted her administrative remedies as to that claim. *See Ortiz*, 2007 Tex. App. LEXIS 818, at *9 ("[T]he fact that the Texas Workforce Commission issued a right to sue letter, instead of dismissing the complaint as untimely, is additional evidence that the complaint was timely filed."); *Westbrook v. Water Valley Indep. School Dist.*, No. 03-04-00449-CV, 2006 Tex. App. LEXIS 3845, at *10 (Tex. App.—Austin May 5, 2006, pet. denied) (mem. op.) ("Although an employee is not required to obtain a right to sue letter prior to

13

filing suit, if the employee has received one, it evidences that she has exhausted her administrative remedies before the TCHR."); *see also* Tex. Lab. Code Ann. § 21.202(b) ("The commission shall dismiss an untimely complaint.").

I would, therefore, conclude that the trial court could have found that the evidence, viewed favorably, supports that Poindexter timely filed her initial complaint of retaliation with the EEOC in May 2001 that was perfected by the May 2002 charge to support the trial court's jurisdiction. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (when no findings of fact or conclusions of law are requested or filed, appellate court implies "that the trial court made all the findings necessary to support its judgment").[8]

### *Disparate Impact*

To support its conclusion that Poindexter failed to comply with the 180-day statutory period for filing a disparate-impact claim, the majority concludes that Poindexter failed to identify

---

[8] Turning a blind eye to the evidence, the majority fails entirely to address Poindexter's affidavit; it only addresses Hale's statements in his affidavit that "the contents of [the May] letters are sufficiently specific to allege employment discrimination on the basis of race and retaliation" and that "a retaliation charge could reasonably be expected to grow out of" Poindexter's May correspondence. As to these statements, the majority concludes that Hale's assertions are legal conclusions that do not constitute probative evidence. I agree that legal conclusions "with no supporting facts or rationale" do not constitute probative evidence, but Hale averred in part as an expert on the EEOC's practices in conducting investigations of employment discrimination claims and as to the EEOC's particular actions in this case. *See McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003). At the hearing on the plea to the jurisdiction, the University objected to Hale's affidavit in part on the ground that it contained legal conclusions. The trial court overruled the University's objection "to the extent that the Court will allow the affidavit for the limited purposes of his expertise of the policies and practices [of the EEOC]. . . . I'm going to allow it for the purposes of his affidavit, and testimony as it relates to the evaluation of cases, and claims, and a determination or practice as it relates to this is what the investigation would look like, and this is what they do and does it cover these issues, but the ultimate issue or legal issue is made by the Court."

14

a facially neutral policy in the perfected complaints and in her correspondence to the EEOC. *See Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir. 2006) ("A disparate-impact plaintiff must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class."); *see generally Ricci v. DeStefano*, 2009 U.S. LEXIS 4945 (explaining disparate-impact claims and applying standard in summary judgment context).[9] The majority concludes that her "administrative charges" "facially" allege only "disparate treatment" and "retaliation," " identif[y] no neutral employment policy," and complain only of past incidents of "retaliation" and "disparate treatment," and that her letters to the EEOC in May and October 2001 also failed because she did not identify a facially neutral policy that "disproportionally harmed black employees."[10]

A complaint to the EEOC is not limited by its express words, but is "limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial

---

[9] As the Supreme Court explained,

> Title VII prohibits both intentional discrimination (known as "disparate treatment") as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as "disparate impact").

> * * *

> Under the disparate-impact statute, a plaintiff establishes a prima facie violation by showing that an employer uses a "particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin."

2009 U.S. LEXIS 4945, at *33-34 (quoting 42 U.S.C. §2000e-2(k)(1)(A)(i) (2009)); *see also id.* at *84 (Ginsburg, J., dissenting) ("In assessing claims of race discrimination, '[c]ontext matters.'" (quoting *Grutter v. Bollinger*, 539 U.S. 306, 327 (2003))).

[10] The majority also concludes that the October 2001 letter was irrelevant in determining whether Poindexter's charge alleged disparate impact.

15

charges of discrimination." *See Fellows*, 701 F.2d at 450-51.  The Court of Appeals for the Fifth

Circuit explained the policy reason for this rule:

> The Civil Rights Act is designed to protect those who are least able to protect themselves.  Complainants to the EEOC are seldom [represented by] lawyers.  To compel the charging party to specifically articulate in a charge filed with the Commission the full panoply of discrimination which he may have suffered may cause the very persons Title VII was designed to protect to lose that protection because they are ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected. . . .  [A] cause of action for Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

*Id*. (internal citations omitted).  Additionally, a disparate-impact claim may be based upon the

"decision-making process" as the challenged "employment practice."  *See* Tex. Lab. Code Ann.

§ 21.122(c) (West 2006) ("decision-making process may be analyzed as one employment practice"

when "elements of a respondent's decision-making process are not capable of separation for

analysis");[11] *see also* 42 U.S.C. §2000e-2(k)(1)(B)(i) (2009); *Ricci*, 2009 U.S. LEXIS 4945, at *34.

---

[11] Section 21.122 of the labor code provides the burden of proof in disparate impact cases in pertinent part:

(a)  An unlawful employment practice based on disparate impact is established under this chapter only if:

(1)  a complainant demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, sex, national origin, religion, or disability and the respondent fails to demonstrate that the challenged practice is job-related for the position in question and consistent with business necessity; or . . .

With these principles in mind, I turn then to a review of the evidence to determine if it supports a finding that an investigation of disparate impact based upon "a particular employment practice" of the University "could reasonably be expected to grow out" of Poindexter's initial charges. *See* Tex. Lab. Code Ann. § 21.122; *Miranda*, 133 S.W.3d at 228; *Fellows*, 701 F.2d at 450-51.

During the 180-day statutory period, Poindexter provided the EEOC with copies of the University's promotion guidelines from the handbook of operating procedures and her letter to the University documenting her complaint. She addressed the promotion process in her letter dated May 23, 2001, and quoted statistics showing a similar pattern throughout the University adverse to women and African-Americans. In the letter, she states:

> Since 1992, six males (five white and one Brazilian) have become full professors in the Department of Journalism. Four were promoted from associate to full professor, including the one who was promoted the year before my promotion was denied. During that same period, no women and no African-Americans have been promoted

---

\* \* \*

(c)     To demonstrate that a particular employment practice causes a disparate impact, the complainant must demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complainant demonstrates to the satisfaction of the court that the elements of a respondent's decision-making process are not capable of separation for analysis, that decision-making process may be analyzed as one employment practice.

(d)     If the respondent demonstrates that a specific practice does not cause a disparate impact, the respondent may not be required to demonstrate that the practice is consistent with business necessity.

Tex. Lab. Code Ann. § 21.122 (West 2006).

17

to the full professor rank. Statistics from the Office of Institutional Studies would indicate that this pattern can be found throughout The University of Texas at Austin.

During the EEOC investigation, Poindexter provided the EEOC with a copy of the Report of the Committee on the Advancement of Minorities that states as to the University's guidelines:

> Although there are System-wide guidelines for granting promotions and tenure, the component institutions—and often smaller academic units (schools, colleges, divisions, etc.)—set forth their own specific criteria for meeting the guidelines. Based on interviews with faculty, it is apparent to the Committee that criteria often are not clear or explicit. In addition, interpretation of the criteria is not uniform, often being left to department heads and deans. Further, criteria are often very general and easily lead to interpretations that may exclude minorities. Thus, while the written criteria may not be discriminatory, the unspoken judgments and interpretations may have that effect.[12]

Hale averred that the EEOC acknowledged Poindexter's "inference [of disparate impact] during its investigation" based on the fact that the "EEOC requested that the Defendant provide[ ] information regarding the racial composition of professors at the University of Texas at Austin." Two categories of information that the EEOC requested from the University were:

1.      A list showing all Associate Professors within the University of Texas at Austin who have sought promotion to Professor between the dates April 1, 1999 and January 25, 2002. For each individual listed, please provide name, race, date of hire, department, college, date(s) that the

---

[12] Consistently, in her briefing to this Court, Poindexter identifies the "six-prong promotion policy of the University of Texas," and her attorney at the hearing on the plea to the jurisdiction identified "the criteria used by the University; that those criteria, as a whole . . . that these unwritten, unknown standards and policies that they use . . . have disparate impact on racial and ethnic minorities."

individual applied for promotion to Professor, and final decision concerning each promotion application.

2.  For each individual identified in the list of applicants for promotion to full Professor, please provide a copy of each recommendation statement from the appropriate Department Budget Council, Department Chairman/Director, and Dean; and a copy of each "Recommendation for Change in Academic Rank/Status" form.

The majority's conclusion that the trial court did not have jurisdiction because Poindexter failed to identify a neutral policy in her administrative charge improperly disregards evidence favorable to Poindexter, delving into the merits of her disparate-impact claim. *See Bland Ind. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Based on the evidence before the trial court, I would conclude that the trial court could have found that the evidence favorable to Poindexter supports a finding that an investigation of disparate impact based on a "particular employment practice" of the University or its "decision-making process" for promotions "could reasonably be expected to grow out of [her] initial charges of discrimination." *See* Tex. Lab. Code Ann. § 21.122; *Miranda*, 133 S.W.3d at 228; *Fellows*, 701 F.2d at 450-51.[13]

---

[13]  The trial court also could have concluded that an investigation of retaliation "could reasonably be expected to grow out of [Poindexter's] initial charges of discrimination" as an alternative basis for affirming the trial court's denial of the University's plea to the jurisdiction as to her retaliation claims. *See Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 450-51 (5th Cir. 1983); *Texas Dep't of Crim. Justice v. Young*, No. 09-07-00635-CV, 2008 Tex. App. LEXIS 7350, at *17-19 (Tex. App.—Beaumont Oct. 2, 2008, no pet.) (mem. op.) (retaliation claim "factually related claim [ ] that could reasonably be expected to grow out of" an investigation of the plaintiff's race and gender discrimination complaints) (citation omitted); *City of La Joya v. Ortiz*, No. 13-06-401-CV, 2007 Tex. App. LEXIS 818, at *13-15 (Tex. App.—Corpus Christi Feb. 1, 2007, no pet.) (mem. op.) (retaliation claim stated in intake questionnaire but not alleged in administrative charge "could be expected to grow out of her charge").

The majority finds *Pacheco* "highly instructive" in reaching its holding "that, as a matter of law, Poindexter's communications with the EEOC did not satisfy the legal requirements for exhausting a disparate-impact charge." *Pacheco* is distinguishable on its facts. In *Pacheco*, the Court of Appeals for the Fifth Circuit affirmed the dismissal of the plaintiff's disparate-impact claim for failure to exhaust administrative remedies, but the court sets forth the appropriate analysis as fact-intensive: "We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." 448 F.3d at 789. In contrast to the correspondence between Poindexter and the EEOC, the plaintiff in *Pacheco* was sent a letter notifying him of the claim that was accepted for investigation[14] and that "if he objected to the way his claim was stated, he should contact the Office within five days"; the plaintiff did not respond. *Id.* at 786. The court also did not address conflicting evidence as to the substance of the "administrative charge" and the "initial charges of discrimination." *See, e.g.*, *id.* at 792 n.15 (newspaper article that acknowledged statistical underrepresentation of Hispanics in federal agencies not relevant to exhaustion question because "it was not submitted to the EEO, but was produced by [the plaintiff], after suit was filed in district court").

In conclusion, because the majority disregards evidence favorable to Poindexter, the non-movant, I concur only in the portion of the opinion reversing the trial court's order as to Poindexter's claims based on chapter 106 of the civil practice and remedies code and respectfully dissent to the remaining portions of the opinion reversing the trial court's order on a plea to the

---

[14] The claim stated in the letter was: "Whether the FAA treated you differently, based on your national origin (Hispanic), when you were not selected for a supervisor's job." *Pacheco v. Mineta*, 448 F.3d 783, 786 (5th Cir. 2006).

jurisdiction as to Poindexter's retaliation and disparate-impact claims and short-circuiting this

litigant's day in court.[15]



_____
                                      Jan P. Patterson, Justice

Before Chief Justice Jones, Justices Patterson and Puryear

---

[15] An alternative ground for affirming the trial court as to both the retaliation and the disparate-impact claims would be to imply that the trial court in its discretion denied the plea to the jurisdiction to "await a fuller development of the case." *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The majority concludes that an abuse-of-discretion standard does not apply "because the trial court did not purport to exercise its discretion in this regard." Because the trial court did not make findings of fact and conclusion of law, however, we are to affirm the trial court's order denying the plea to the jurisdiction if it can be upheld on any legal theory that finds support in the evidence. *See Miranda*, 133 S.W.3d at 227; *Worford*, 801 S.W.2d at 109 ("The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence.").